JOSIAS PENNINGTON, PLAINTIFF IN ERROR, v. LYMAN GIBSON.

Whenever the parties to a suit and the subject in controversy between them are within the regular jurisdiction of a court of equity, the decree of that court is to every intent as binding as would be the judgment of a court of law.

Whenever, therefore, an action of debt can be maintained upon a judgment at law for a sum of money awarded by such judgment, the like action can be maintained upon a decree in equity which is for a specific amount; and the records of the two courts are of equal dignity and binding obligation.

A declaration was sufficient which averred that "at a general term of the Supreme Court in Equity for the State of New York," &c. &c. Being thus averred to be a court of general jurisdiction, no averment was necessary that the subject-matter in question was within its jurisdiction. And the courts of the United States will take notice of the judicial decisions in the several States, in the same manner as the courts of those States.

6 *

THIS case was brought up by a writ of error from the Circuit Court of the United States for the District of Maryland.

The facts of the case are set forth in the opinion of the court.

It was argued by *Mr. Schley*, for the plaintiff in error, and by *Mr. Frick* and *Mr. Collier*, for the defendant in error.

*Mr. Schley* stated that there were three causes assigned for the demurrer to the declaration. They were —

1. For that it appears from the declaration, that the cause of action is an alleged decree of an alleged court of equity, as set forth in said declaration; whereas, an action at law cannot be maintained in this court, on such a decree; at least without averment in pleading, that said decree, within the limits of its territorial jurisdiction, is of equal efficacy with a judgment at law.

2. For, even if an action at law can be maintained for the recovery of the sums of money directed by such alleged decree to be paid, as stated in said declaration, yet the form of action adopted in this case is not the proper form of action for the enforcement of such recovery.

3. For that it does not appear in and by the said declaration, nor is it therein averred, in any manner, that the said alleged court of equity had any jurisdiction to pass a decree against this defendant for payment to the plaintiff of any of the sums of money in the said declaration mentioned.

After joinder in demurrer, the court gave judgment upon the demurrer in favor of the plaintiff below, for $6,134.86, and $3,000 damages; the damages to be released on payment of the debt, with interest from 25th November, 1848, and costs of suit.

The counsel for the plaintiff in error will insist that said several causes of demurrer were well assigned.

As to the first ground. There is no averment that said "Supreme Court in Equity of the State of New York," is a court of record. The decree is referred to "as remaining in the office of the County Clerk of Steuben county." No averment that such a decree in the State of New York is of equal efficacy with a judgment at law.

It is conceded that it has been held, in many cases, in this court, that a decree in Chancery is equally as conclusive as a judgment in a court of common law. In Hopkins *v.* Lee, 6 Wheat. 109, the decree was evidenced by the record of the proceedings in Chancery in the Circuit Court for the District of Columbia; and being offered in evidence in the same court, the only question was as to the effect of said decree as evidence.

But Hugh v. Higgs, 8 Wheat. 697, is an express decision on the very point, and sustains the demurrer. Smith v. Kernochen, 7 How. 217, merely decided the effect, in evidence, of a decree in Chancery, as between the parties. It was not the case of an action at law grounded on a decree. On this point, the following cases will also be relied on: Carpenter v. Thornton, 3 B. & Ald. 52; Houlditch v. Marquis of Donegal, 8 Bligh, N. S. 301; and 1 Stat. at Large, 122, and notes there, will be cited.

On the second point, the following cases will be cited: Walker v. Witter, 1 Doug. 1; Dupleix v. De Roven, 2 Vern. 540; Crawford v. Whittall, and Sinclair v. Fraser, Doug. 4.

As to the ground of demurrer thirdly assigned, it will be insisted that the courts of the United States cannot judicially know the extent or character of the jurisdiction of the said Court of Equity; and of course cannot know whether it had jurisdiction over the subject-matter, or over the plaintiff in error. There is no averment in the declaration as to the jurisdiction of said court; nor is it even averred that said court was holden at a place within its jurisdiction, or that said decree was pronounced within its jurisdiction. It is consistent with all that is averred in pleading that the decree may be merely void. The following cases will be cited: Boswell's Lessee v. Otis, 9 How. 349; Allen v. Blunt, 1 Blatch. Cir. Court, 480; D'Arcy v. Ketchum, 11 How. 165; Crawford v. Howard, 30 Maine, (17 Shep.) 422; Burckle v. Eckart, 3 Denio, 279; Cobb v. Haynes, 8 B. Mon. 137; Van Buskirk v. Mulock, 3 Harr. 184; Moravia v. Sloper, and Herbert v. Cook, Willes, 30, 37; Read v. Pope, 1 Cr. Mee. & R. 302; S. C. 4 Tyrw. 403. It is not to be intended that, because a court is termed a superior court, that it is a court of general jurisdiction. It may be an inferior court, and of limited jurisdiction.

The counsel for the defendant in error thus stated and argued the points.

The questions for argument arise upon the demurrer, which raises substantially three points, namely:

1. That an action at law cannot be maintained in the courts of the United States, upon the decree of a State court of equity.

2. That if such action be maintainable, the declaration must set forth that the decree, within the limits of the State in which it is passed, is of equal efficacy with a judgment at law; and also that the court had jurisdiction to pass the decree in question.

3. That the action, if maintainable. must be assumpsit, not debt.

1st. Under the Constitution of the United States, and the laws of Congress, the judgments of the courts of each State are to be regarded in all other States, not as foreign, but domestic judgments; and as equally conclusive with domestic judgments. Mills v. Duryee, 7 Cranch, 481; Hampton v. McConnell, 3 Wheat. 234.

And where the court has jurisdiction of the parties and the subject-matter, a decree in chancery is equally conclusive between the parties with a judgment at law. "In this there is, and ought to be no difference between a verdict and judgment in a court of common law, and a decree of a court of equity. They both stand on the same footing, and may be offered in evidence under the same limitations; and it would be difficult to assign a reason why it should be otherwise." Hopkins v. Lee, 6 Wheat. 113, 114.

In all the States where the question has arisen, (in Kentucky, Louisiana, Tennessee, South Carolina, Maine, and New York,) decrees in Chancery have been held to be within the Constitution and act of Congress; which make them equally with judgments at law, of the same dignity in all other States, as in the State in which they are pronounced. See Cowen and Hill's Notes to Phillips's Evidence, Part II. p. 900, and the cases there cited.

This being so, the money decree of a court of chancery of competent jurisdiction is in every other State, the final and conclusive ascertainment of a debt, upon which a legal obligation to pay arises. And there can be no sufficient reason, why an action of debt should not be maintained as well on such a decree, as upon a judgment at law. There may be decrees in Chancery, which cannot well form the basis of a suit at law. Such are decrees for specific performance, or such as contain multifarious matter, or require acts and conditions to be performed by each party. But this objection cannot be made to a final decree for the payment of a specific sum of money, free from conditions or qualifications of any kind. A legal obligation to pay is necessarily implied by such a decree.

"Every man is bound, and hath virtually agreed to pay such particular sums of money, as are charged on him by the sentence or assessed by the interpretation of the law. Whatever the laws order any one to pay, that becomes instantly a debt, which he hath beforehand contracted to discharge. This implied agreement gives the plaintiff a right to institute a second action, founded merely on the ground of contract, to recover such a sum. So, if he hath obtained judgment, he may bring an action of debt on this judgment, &c., &c.; and the law implies, that by the original contract of society, the defendant hath

contracted a debt, and is bound to pay it." 3 Blackstone, Comm. 160. It is on this ground alone, that "assumpsit" lies on foreign judgments; and why not on a decree in equity for the payment of money?

It has been said, that a legal obligation cannot be implied from a merely equitable obligation to pay; and that an action at law cannot be maintained upon a decree in equity for the payment of money founded on equitable considerations only. Carpenter v. Thornton, 3 Barn. & Ald. 52, (5 E. C. L. R. 225.) In that case, it appeared from the record, that the bill was filed for the specific performance of an agreement to purchase; and the decree was manifestly on the ground of that particular equity. The chief objection to the suit urged in argument, was, that it had been brought in England upon a decree of the High Court of Chancery of England, having, of course, the power to enforce its own decrees in the territory in which the suit was brought. It was determined, under the circumstances of that case, that the action would not lie.

But in a subsequent case, Henley v. Soper, 8 Barn. & Cress. 16, (15 E. C. L. R. 147,) it was admitted and held that debt would lie on the decree of a colonial court of equity (in Newfoundland) for the payment of a specific balance found to be due by one partner to another. Lord Tenterden, (by whom Carpenter v. Thornton was determined,) said, "There is a great difference between the decree of a colonial court, and a court of equity in this country. The colonial court cannot enforce its decrees here: a court of equity in this country, may. In the latter case, there is no occasion for the interference of a court of law; in the former, there is, to prevent a failure of justice. The case of Carpenter v. Thornton does not establish the broad principle for which it was cited," that is, that no action at law could be maintained on a decree in equity.

In Sadler v. Robins, 1 Campb. 253, it was also held, that an action at law was maintainable upon the decree of a colonial court of equity. The amount of the decree in that case was indefinite. But Lord Ellenborough said, "Had the decree been perfected, I would have given effect to it, as well as to a judgment at common law. One may be the consideration for an assumpsit equally with the other."

This question, in England, seems to have been settled by the two cases last referred to. In 7 Wentworth's Pleadings, 95, is a precedent for an action of debt for a sum of money decreed by the Lord Chancellor to be paid to the plaintiff; and the form is attributed to Mr. Tidd. The books of precedents all contain forms of actions upon foreign decrees in equity. The only exception would seem to be the case of an action at law, brought

in the same territorial jurisdiction, to enforce a decree in equity, appearing on its face to be grounded on equitable considerations only. See Carpenter *v.* Thornton.

It has been repeatedly ruled in this country, that the action would lie upon a chancery decree ordering the payment of money. Post *v.* Neafie, 3 Caines, 22; Dubois *v.* Dubois, 6 Cowen, 496; see also 19 Johnson's R. 166, 577; Evans *v.* Tatem, 9 Serg. & Rawle, 252; Howard *v.* Howard, 15 Mass. 196; McKim *v.* Odom, 3 Fairfield 94.

In the first case, (Post *v.* Neafie) Chief Justice Kent dissented from the opinion of the court; but chiefly on the ground, that as the Supreme Court of New York, in Hitchcock & Fitch *v.* Aicken, (1 Caines, 469,) had determined the judgments of sister States, to be only *primâ facie* evidence, and open to inquiry upon their merits, to sustain an action at law upon the decree in equity of another State, would involve the court in the discussion and determination of questions of exclusively equitable jurisdiction, which a court of law was not competent to pass upon. The overruling of the case of Hitchcock & Aicken, and the settlement of the question by this court, that a judgment is conclusive in every other State if a court of the State where it was rendered would hold it so, has removed, it may fairly be presumed, the reason of Chancellor Kent's objection to the ruling in Post *v.* Neafie. See 1 Kent's C. 5th ed. 260, 261. Note C.

In the case of McKim *v.* Odom, 3 Fairfield, 94, the whole subject is most fully and learnedly discussed; and the authority is worthy of special reference.

To refuse the jurisdiction contended for, it is obvious would, in this country, amount in many cases to an absolute denial of justice. In some of the States there is no court of equity, so called; and if a plaintiff in such States, to enforce a decree in equity obtained lawfully in another State, may not resort to a court of law, where the defendant has removed from and holds no property in the State in which the decree was passed, but has both residence and property in the State in which he must be sued at law, if at all — there is, to all practical intent, a right, for which there is no remedy. In the American cases cited, the distinction taken in Carpenter *v.* Thornton, between decrees passed upon legal and equitable considerations, does not seem to have been regarded; but the distinction, even if well founded, cannot apply to this case. For from any thing that appears to the contrary on the record, the obligation of the defendant in equity (plaintiff in error) upon which the decree was passed, might have been binding in law as well as in equity.

2d. If the action can be maintained, it is not necessary to set forth in the declaration, that the decree sued on is of equal efficacy in the State in which it was passed, with a judgment at law; or that the court had jurisdiction to pass the decree. By the act of May, 1790, it is provided, that the judicial proceedings of the State courts shall have such faith and credit given to them in every court within the United States, as they have by law or usage in the courts of the State, from which the records are or shall be taken. If they are conclusive in the State where pronounced, they are so everywhere. If open to examination there, they are so everywhere. A decree in chancery is, from its nature, equally conclusive with a judgment at law. 6 Wheat. 113, &c. It may not have equal efficacy in the State in which it is passed, with a judgment at law, in respect to the mode and means of its enforcement: but it is of like conclusiveness, as "*res adjudicata*," provided the court had jurisdiction of the parties and subject-matter. It is averred by the declaration in this case, that the decree in question was duly signed and enrolled, &c.; and as the record of the judicial proceedings of another State, (every presumption being in favor of the jurisdiction,) it is *primâ facie* evidence that the court had jurisdiction over the parties and subject-matter; (see 4 Cowen's R. 294, 296, and 8 Cowen, 311,) and it is conclusive upon them while not reversed, set aside, &c., unless that evidence be rebutted. But that issue is matter of defence, and must be so tendered. It is not necessary to aver in pleading, by the declaration, that there was jurisdiction to pass the decree, in a suit on such decree, any more than to aver the jurisdiction to render a judgment, in a suit on such judgment: nor to allege the conclusiveness of the one, any more than that of the other. As the plea to an action of debt upon the judgment of another State must be "*nul tiel record*," and not "*nil debet*," so the plea to an action on a decree of another State must be of like import. In either case, of course, a special plea to the jurisdiction would be good: and if the conclusiveness of either cause of action is to be called in question, it may, and must be done as matter of defence. No precedent can be found of debt on judgments or decrees, where the jurisdiction is averred in the declaration.

In England, there is a distinction between superior and inferior courts. In the former every thing is intended to be within the jurisdiction; in the latter, every material fact must be alleged to be within the jurisdiction. It is necessary, therefore, in a suit in a superior, upon the judgment of an inferior court, to allege not merely that the latter had jurisdiction, but that the "original cause of action arose within the jurisdiction, &c." Read *v.* Pope, 1 C. M. & R. 302. (Exchequer.)

So, in pleading the judgments of courts of limited and special jurisdiction, it may be necessary to state the facts upon which the jurisdiction is founded; but, with respect to courts of general jurisdiction, the rule is, that they are presumed to have jurisdiction until the contrary clearly appears. The want of jurisdiction must be averred, as matter of defence. "Every presumption is in favor of the jurisdiction of the court. The record is *primâ facie* evidence of it, and will be held conclusive, until clearly and explicitly disproved." 4 Cowen's Rep. 294. 296; Cowen & Hill's Notes, Part II. 905, 906.

We have considered this case on the assumption that the decree sued on was that of a chancery court, exercising general equity jurisdiction. But in fact, it was passed by a court exercising no separate equity jurisdiction, but having general jurisdiction over the whole cause of action, whether founded on legal or equitable considerations. Its decree, so called, was as much a judgment at law as it was a decree in chancery, to certain intents and purposes, in the State of New York, and was made so by the constitution and laws of that State.

The federal courts, supreme and inferior, considering their relations to the States, are supposed to have judicial knowledge of the constitutions, laws, and public usages of all the States. Whatever question may be as to the propriety of the State courts taking such judicial notice, there can be none in regard to this court. See Cowen & Hill's Notes, Part II. pp. 901, 902. The New Constitution, the Judiciary Act, and Code of Procedure of the State of New York, may therefore properly be examined, to ascertain the jurisdiction of the court which passed the decree on which this action was brought.

The New Constitution of New York, adopted November, 1846, Art. 6, § 3, provides: "There shall be a supreme court, having general jurisdiction in law and equity." Sect. 6. "The legislature shall have the same power to alter, and regulate the proceedings in law and equity, as they have heretofore possessed." Art. 14, § 8: "The offices of Chancellor, Vice-Chancellor, &c., are abolished, from and after the first Monday in July, 1847."

The Judiciary Act, passed after the adoption of the New Constitution, (Laws of 1847, c. 280, § 16,) provides. "The Supreme Court, organized by this act, shall possess the same powers and exercise the same jurisdiction, as is now possessed and exercised by the Supreme Court, and Court of Chancery, &c., and all laws relating to the present Supreme Court, and Court of Chancery, and the jurisdiction, powers and duties of said courts, &c., shall be applicable to the Supreme Court, organized by this act, &c., so far as the same can be so applied, and are consistent with the Constitution, and the provisions of this act.

Pennington *v.* Gibson.

The Code of Procedure, passed April 12, 1848, c. 379, § 62, provides: " The distinction between actions at law and suits in equity, and the forms of all such actions and suits, as heretofore existing, are abolished; and there shall be in this State hereafter but one form of action for the enforcement or protection of private rights, and the redress or prevention of private wrongs, which shall be denominated a civil action.

Sec. 62. "The party complaining shall be known as plaintiff, &c."

Sec. 119. " The first pleading on the part of the plaintiff is the complaint."

Sec. 120. " The complaint shall contain, 1. The title of the cause, &c. 2. A statement of the facts constituting the cause of action, &c. 3. A demand of the relief to which the plaintiff supposes himself entitled. If the recovery of money be demanded, the amount thereof shall be stated."

This act (§ 391,) went into effect July 1, 1848. The decree of the Supreme Court, in this case, was signed and enrolled April 30, 1849. At the time of its rendition, the distinction, in New York, between actions at law and suits in equity was abolished, and there was but one form of action in all civil cases. The decree, therefore, so called, was of " equal efficacy " with a judgment at law. It was passed by a court of general jurisdiction, whose judgments were conclusive in New York; and moreover, by whatever technical title known, it was a final judgment for the payment of money, rendered by a court having no separate equity jurisdiction or powers, though properly exercising complete jurisdiction over the parties and subject-matter. In no other court in New York could it be a matter of inquiry, whether that judgment was founded upon legal or equitable considerations. How then, in any other State court, or court of the United States, could it be viewed as a decree in chancery, founded upon equitable considerations only ? What other action could be maintained in another State for its enforcement, than an action at law, there being only one form of civil action, for that purpose, in the State of New York ?

3d. Debt is the proper remedy; assumpsit would not lie. The latter is maintainable only upon the judgment of a foreign court, which is not regarded as a record, nor as a specialty, but only as *primâ facie* evidence of a simple contract debt; as in England, upon an Irish judgment, or Scotch decree ; or in this country, before the Revolution, upon judgments of other States. Chitty's Pleading, vol. 1, p. 106.

But the judgments of other States are not now regarded as foreign judgments, but as of the same nature and effect as domestic judgments. The original debt is therefore thereby

merged, and the plaintiff must resort to his highest remedy. The decree is a record, (and there is here the proper averment, *prout patet per cecordum, &c.,*) and debt or *scire facias* is the only remedy on such records.

In the case of Hugh *v.* Higgs and Wife, 8 Wheat. 697, the action was " case," to recover money due under the decretal order of a court of equity. It was conceded by both the counsel, as stated by the court, that the action would not lie for the money ordered to be paid by the decree; but it was supposed and so argued, that the record showed that money had been received by the defendant upon transactions which took place after the decree, and the right to recover was put in argument on that ground.

It is quite clear, however, that if assumpsit would lie in this case, debt also could be maintained; for it lies concurrently with assumpsit, upon all foreign judgments, decrees of colonial courts, &c.; in fact, on all judgments or decrees, upon which assumpsit would lie.    Chitty's Pleading, vol. 1, p. 111.

Mr. Justice DANIEL delivered the opinion of the court.

The defendant in error, a citizen of the State of New York, instituted in the Circuit Court an action of debt against the plaintiff in error, a citizen of the State of Maryland, to recover the amount of a decree, with the costs thereon, which had been rendered in favor of the defendant against the plaintiff in error by the Supreme Court in equity in the State of New York. The averments in the declaration are as follow: That at a general term of the Supreme Court in Equity of the State of New York, one of the United States of America, held at the court house in the village of Cooperstown, in the county of Otsego, in the State of New York, on the first Monday in November in the year 1848, present William H. Shankland (and others) Justices, it was ordered, adjudged and decreed, by the said court, in a certain suit therein pending, wherein the said Lyman Gibson was complainant, and the said Josias Pennington (and others) were defendants, that the said Lyman Gibson recover against the said Josias Pennington, and that the said Josias Pennington pay to the said Lyman Gibson, the amount of the consideration money paid by the said Lyman Gibson to a certain Samuel Boyer, as agent and attorney of the said Josias Pennington, as should appear by the several indorsements upon the contract mentioned and set forth in the bill of complaint, and produced and proved as an exhibit in said suit, with interest on the several payments and indorsements respectively, amounting in the aggregate on the 25th day of November, 1848, to the sum of $5,473.18, and also that the said Josias Pennington pay to

the said complainant his costs in said suit, which were taxed at the sum of $661.68, as by the said decree duly signed and enrolled at a special term of the Supreme Court in equity aforesaid, held on the 30th day of April in the year 1849, at the village of Bath, in the county of Steuben, in the State of New York, and now remaining in the office of the Clerk of Steuben county aforesaid, will on reference appear.

To the declaration as above stated, the defendant, the now plaintiff in error, demurred; and upon a joinder in demurrer, the court overruled the demurrer of the said defendant, and gave judgment for the plaintiff, the now defendant in error, for the debt and costs in the declaration set forth, together with costs of suit.

The defendant in the Circuit Court assigned for causes of demurrer the three following:

1. For that it appears from the said declaration that the cause of action in this case is an alleged decree of an alleged court of equity, as set forth in the said declaration, whereas an action at law cannot be maintained in this court on such a decree; at least without an averment in pleading that said decree within the limits of its territorial jurisdiction is of equal efficacy with a judgment at law.

2. For even if an action at law can be maintained for the recovery of the sums of money directed by such alleged decree to be paid, as stated in said declaration, yet the form of action adopted in this case is not the proper form of action for the enforcement of such a recovery.

3. For that it does not appear in and by the said declaration, nor is it averred in any manner, that the said alleged court of equity had any jurisdiction to pass a decree against this defendant for payment to the plaintiff of any of the sums of money in the said declaration mentioned.

In considering these causes of demurrer, the attention is necessarily directed to the ambiguous terms assumed in the first assignment, by propounding a proposition general or universal in its character, and afterwards conceding a modification or change in that proposition inconsistent not merely with its scope and extent, but with its essential force and operation. For instance, it is first stated that " the cause of action is an alleged decree of an alleged court of equity, whereas an action at law cannot be maintained in this court on such a decree." We can interpret this proposition to have no other intelligible meaning than this, and to be comprehended in no sense more restricted than this, namely, that an action at law cannot be maintained in a court of law when the cause of action shall be a decree of the court of equity. In other words, that the character of the foun-

dation, or cause of action, namely, its being a decree of a court of equity, must, in every such instance, deprive the court of law of cognizance of the cause. The proposition, thus generally put, is then followed by a qualification in these words, "at least without an averment in pleading, that the decree within its territorial jurisdiction is of equal efficacy with a judgment at law." By this language the universality of the previous proposition is modified, or rather contradicted, for it contains an obvious concession, that provided a particular efficiency can be affirmed with regard to it, an action at law may be maintained even upon a decree of a court of equity.

We will first examine the correctness of the general position, that an action at law cannot be maintained upon a decree in equity ; and will, in the next place, inquire how far the jurisdiction of the court pronouncing this decree, and the efficiency of its proceedings with reference to the parties before it, may be inferred or rightfully taken notice of, from its style or character, or from proper judicial knowledge of the subject-matter of its cognizance, independently of a particular special averment.

We are aware that at one period courts of equity were said not to be courts of record, and their decrees were not allowed to rank with judgments at law; with respect to conflicting claims of creditors, or in the administration of estates ; but these opinions, the fruits of jealousy in the old common lawyers, would now hardly be seriously urged, and much less seriously admitted, after a practice so long and so well settled, as that which confers on courts of equity in cases of difficulty and intricacy in the administration of estates, the power of marshalling assets, and in the exercise of that power the right of controlling the order in which creditors, either legal or equitable, shall be ranked in the prosecution of their claims. The relative dignity of courts of equity, and the binding effect of their decrees, when given within the pale of their regular constitution and jurisdiction, are no longer subjects for doubt or question.

We hold no doctrine to be better settled than this, that whenever the parties to a suit and the subject in controversy between them are within the regular jurisdiction of a court of equity, the decree of that court solemnly and finally pronounced, is to every intent as binding as would be the judgment of a court of law, upon parties and their interests regularly within its cognizance. It would follow, therefore, that wherever the latter, received with regard to its dignity and conclusiveness as a record, would constitute the foundation for proceedings to enforce it, the former must be held as of equal authority. These are conclusions which reason and justice and consistency sustain, and an investigation will show them to be supported by express adjudica-

Pennington *v.* Gibson.

tion. It is true that, owing to the peculiar character of equity jurisprudence, there are instances of decisions by courts of equity which can be enforced only by the authority and proceedings of these courts. Such, for example, is the class of cases for specific performances; or wherever the decision of the court is to be fulfilled by some personal act of a party, and not by the mere payment of an ascertained sum of money. But this arises from the nature of the act decreed to be performed, and from the peculiar or extraordinary power of the court to enforce it, and has no relation whatsoever to the comparative dignity or authority between judgments at law and decrees in equity.

We lay it down, therefore, as the general rule, that in every instance in which an action of debt can be maintained upon a judgment at law for a sum of money awarded by such judgment, the like action can be maintained upon a decree in equity which is for an ascertained and specific amount, and nothing more; and that the record of the proceedings in the one case must be ranked with and responded to as of the same dignity and binding obligation with the record in the other.

The case of Sadler *v.* Robins, 1 Campbell, 253, was an action upon a decree of the High Court of Chancery in the Island of Jamaica, for a sum of money; "first deducting thereout the full costs of the said defendants expended in the said suit, to be taxed by one of the masters of the said court; and also deducting thereout all and every other payment which S. & R., or either of them, might on or before the 1st day of January, 1806, show to the satisfaction of the said master, they or either of them had paid, &c." In this case Lord Ellenborough said, "had the decree been perfected, I would have given effect to it as to a judgment at law. The one may be the consideration for an assumpsit equally with the other. But the law implies a promise to pay a definite, not an indefinite sum."

The case of Henly *v.* Soper, 8 Barn. & Cress. 16; of Dubois *v.* Dubois, 6 Cowen, 496, and of McKim *v.* Odom, 3 Fairfield, 94, are all expressly to the point, that the action of debt may be maintained equally upon a decree in chancery as upon a judgment at law. But if this question had been left in doubt by other tribunals, it must be regarded as settled for itself by this court, in the explicit language of its decision in the case of Hopkins *v.* Lee, 6 Wheat. 109, where it is declared as a general rule, "that a fact which has been directly tried and decided by a court of competent jurisdiction, cannot be contested again between the same parties, in the same or in any other court. Hence a verdict and judgment of a court of record, or a decree in chancery, although not binding on strangers, puts an end to a'

7 *

farther controversy concerning the points decided between the parties to such suit. In this there is, and ought to be no difference between a verdict and judgment in a court at law and a decree of a court of equity. They both stand upon the same footing, and may be offered in evidence under the same limitations; and it would be difficult to assign a reason why it should be otherwise. The rule has found its way into every system of jurisprudence, not only from its obvious fitness and propriety, but because, without it, an end could never be put to litigation. It is therefore not confined in England or in this country to judgments of the same court, or to the decisions of courts of concurrent jurisdiction; but extends to matters litigated before competent tribunals in foreign countries." The case of Dubois v. Dubois, 6 Cowen, was an action of debt upon a decree for a specific sum, by a surrogate of one of the counties of the State of New York. One of the objections in that case was, that the action of debt could not be maintained; and another that no jurisdiction was shown by the declaration. The Supreme Court, in its opinion, say: " The principal question raised is, whether debt will lie. The general rule is, that this form of action is proper for any debt of record, or by specialty, or for any sum certain. It has been decided that debt lies upon a decree for the payment of money made by a court of chancery in another State, and no doubt the action will lie upon such a decree in our domestic courts of equity. The decree of the surrogate, unappealed from, is conclusive, and determines forever the rights of the parties. It may be enforced by imprisonment, and is certainly evidence of a debt due; whether the surrogate's court be a court of record need not be decided. It has often been said, that a court of chancery is not a court of record. It is sufficient that a decree in either court, unappealed from, is final — debt will lie." In opposition to the doctrine we have laid down, the case of Carpenter v. Thornton, from 3 Barn. & Ald. 52, has been cited, to show that the action of debt will not lie upon a decree of a court of equity. But with respect to the case of Carpenter v. Thornton it must be remarked, that Lord Tenterden, who decided that case, has, in the subsequent case of Henly v. Soper, 8 Barn. & Cress. 20, explicitly denied that the former case can be correctly understood as ruling any such doctrine or principle as that for which it has been here adduced. In Henly v. Soper, his lordship says of Carpenter v. Thornton, " I think it does not establish the broad principle for which it is cited. It appears by the report that I then expressed myself with much caution, and I do not find that I ever said that a decree of a court of equity fixing the balance due on a partnership account could not be enforced in a court of law

unless the items of the account could be sued for. My judgment proceeded on the particular circumstances of that case; the bill was for the specific performance of an agreement, which is a matter entirely of equitable jurisdiction. But it is a general rule that if a partnership account be settled, and a balance struck by due authority, that balance may be recovered in an action at law." In support of the objection that the action in this case is founded on a decree in chancery could not be maintained, the counsel for the plaintiff in error has cited the case of Hugh v. Higgs and Wife, reported in 8 Wheat. 697. This is a short case, presenting no precise statement of the facts involved in it, and as far as the facts are disclosed by the report, they are given in a somewhat confused and ambiguous form. It is true that the objection to the action, as founded on a decree in chancery, is said by the court to have been urged in its broadest extent. But if we look to the decision of this court, and the reasoning upon which that decision is rested, we find the objection to the judgment of the Circuit Court, or rather the principle of that objection, narrowed and brought considerably within the extent of the objection itself. For this court say that the judgment of the Circuit Court must be reversed for error in the opinion which declares, that the action is maintainable on the decretal order of the Court of Chancery. It might very well be error to allow the action of debt upon a decretal order of the chancery, and yet perfectly regular to sustain such an action upon the final decree. The former is subject to revision and modification, the latter is conclusive upon the rights of the parties. There is yet another ground on which this case of Hugh v. Higgs and Wife, so imperfectly stated, might form an exception to the rule which authorizes actions of debt upon decrees in equity. In the case last mentioned, the action at law was brought and the judgment rendered within the regular limits of the equity jurisdiction of the court, and to the full extent of which limits the Court of Equity had the power to enforce its decrees. Under these circumstances it might well be ruled, that a party having the right to avail himself directly of the power and process of the court, should not capriciously relinquish that right, and harass his adversary by a new and useless litigation. An exception like this is perfectly consistent with the rule that where the decree of the Court of Equity cannot be enforced by its own process, and within the regular bounds of its jurisdiction, such decree when regular and final, and when especially it ascertains and declares the simple pecuniary responsibility of a party, may, and for the purposes of justice must be, the foundation of an action at law against that party whose responsibility has been thus ascertained. Upon

this principle it is that the courts of law in England, whilst they have been inclined to restrict the plaintiff to the proper process of the Court of Equity for the purpose of enforcing the decrees of the court within the bounds of its jurisdiction, have undeviatingly maintained the right of action upon decrees pronounced by the colonial courts. The process of the colonial courts could not run into the mother country, but this fact did not impair the rights settled by the decrees of those courts or render them less binding or final as between the parties. On the contrary, it is assigned as the special reason why the courts of law should take cognizance of such causes without which an entire failure of justice would ensue.

For this rule of decision in the English courts the cases of Sadler v. Robins, and of Henly v. Soper, may again be recurred to ; and, for its adoption by courts in our own country, may be cited Post v. Neafie, 3 Caines's Rep. 22, and Dubois v. Dubois, and McKim v. Odom, already mentioned.

Having disposed of the general proposition in the first assignment of causes of demurrer by the plaintiff in error, we will next inquire into the force of the condition or modification he has annexed to it, in the alleged necessity for an express averment in pleading of the efficacy or legal obligation of the decree within the territorial jurisdiction of the court by whom the decree has been pronounced.

Of the binding obligation, and conclusiveness of decrees in equity where the parties and the subject-matter of such decrees are within the regular cognizance of the court pronouncing them, and of their equality in dignity and authority with judgments at law, we have already spoken. It remains for us only to consider what may be legally intended or concluded from the pleadings in this cause as to the territorial extent of jurisdiction in the court whose decree is made the foundation of this action.

The declaration avers, " That at a general term of the Supreme Court in equity for the State of New York, one of the United States of America, held at the village of Cooperstown in the State of New York, on the 1st Monday in November, in the year 1848, it was ordered, adjudged, and decreed, &c., and farther, that on the 25th of November, 1848, the complainant's costs were taxed, &c., as by the said decree duly signed and enrolled at a special term of the said Supreme Court, &c., and now remaining in the office, &c., reference being thereto had, will appear."

It is undeniably true in pleading, that where a suit is instituted in a court of limited and special jurisdiction, it is indispensable to aver that the cause of action arose within such restricted jurisdiction ; but it is equally true, with regard to

superior courts, or courts of general jurisdiction, that every presumption is in favor of their right to hold pleas, and that if an exception to their power or jurisdiction is designed, it must be averred, and shown as matter of defence. Such is the general rule as laid down by Chitty, vol. 1, p. 442. So too in the case of Shumway *v.* Stillman, in 4 Cowen, 296. The Supreme Court of New York, speaking with reference to a judgment rendered in another State, says: " every presumption is in favor of the judgment. The record is *primâ facie* evidence of it, and will be held conclusive until clearly and explicitly disproved." And in farther affirmation of the doctrine here laid down, we hold that the Courts of the United States can and should take notice of the laws and judicial decisions of the several States of this Union, and that with respect to these, nothing is required to be specially averred in pleading which would not be so required by the tribunals of those States respectively. In the case before us the declaration avers that the decree on which the action is founded was a decree of the Supreme Court in equity of the State of New York — of a court whose jurisdiction in equity was supreme, not over a section of the State; but that it was the Supreme Court as to subjects of equity of the State, that is, of the entire State; and its decrees being ranked, in our opinion, as equal in dignity and obligation with judgments at law, its decree in the case before us was of equal efficacy with any such judgment throughout its territorial jurisdiction, or, in other words, throughout the extent of the State.

The second and third causes of demurrer assigned by the plaintiff in error, are essentially comprised in the first assignment, and are mere subdivisions of that assignment; and in disposing therefore of the first, the second and third causes of demurrer are in effect necessarily passed upon. We are of the opinion that the demurrer of the plaintiff in error was properly overruled, and that the judgment of the Circuit Court be, as it is hereby, affirmed, with costs.

## *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Maryland, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby affirmed, with costs and interest, until paid, at the same rate per annum that similar judgments bear in the courts of the State of Maryland.