GUSTAVUS A. SMITH

*v.*

FELICIANO MONTOYA.

Filed October 11, 1883.

1. ATTACHMENT—NON-RESIDENT DEFENDANT—PUBLICATION.

The provision of the statute regulating attachments (Prince, St. p. 138, § 11) that published notice to a non-resident defendant shall inform him that his property has been attached, and that, unless he appears, judgment will be rendered against him and the property sold to satisfy it, is not modified or repealed by the act of 1862, (Id. p. 143, § 36,) which merely changed the law as to the persons authorized.

to make publication; nor by the act of 1874, (Id. p. 133,) which, in addition to the previous law of attachments, provided for the citation of non-residents by publication in ordinary actions at law and suits in chancery, and a notice published in an action of *assumpsit*, which omits these requisites, will not give jurisdiction in attachment.

2. JURISDICTION—PRESUMPTION IN FAVOR OF.

The jurisdiction of a court of general jurisdiction will be presumed from the record of a judgment in evidence, but this presumption may be rebutted by the record of the entire case disclosing a want of jurisdiction.

3. JURY—INSTRUCTIONS—FRAUDULENT CONVEYANCE.

The submission to a jury of the validity of a mortgage set up as against attaching creditors, without submitting the facts on which its validity must be determined, is error.

Error to the first judicial district, Santa Fe county.

BRISTOL, J.   The record in this case shows that Feliciano Montoya, the defendant in error, on the twenty-sixth of December, 1878, sued out an attachment against the property of Jerome J. Hinds, George E. Kirk, Ulyses E. Fisher, and George L. McDonaugh, to satisfy his money demand, in the sum of $400.   On the following day said Montoya filed his declaration in *assumpsit* against said Hinds, Kirk, Fisher, and McDonaugh *as copartners*, and alleging them, and each of them, to be non-residents of the territory, and claiming damages in the sum of $350.   On the same day that the declaration was filed,—that is, the twenty-seventh of December, 1878,—the plaintiff in error herein, Gustavus A. Smith, was summoned as garnishee.

The following notice was published in a weekly newspaper at Santa Fe, for four successive weeks, commencing on the fourth of January, 1879, to-wit:

"IN THE DISTRICT COURT, COUNTY OF SANTA FE.

"*Feliciano Montoya* v. *Jerome J. Hinds, Geo. E. Kirk, Ulyses E. Fisher, and Geo. L. McDonaugh.*

"The said defendants, Jerome J. Hinds, Geo. E. Kirk, Ulyses E. Fisher, and Geo. L. McDonaugh, are hereby notified that a suit by attachment has been commenced against them in the district court for the county of Santa Fe, territory of New Mexico, by said plaintiff, Feliciano Montoya, for the work and labor, care, and diligence, of the plaintiff, horse-feed, horse and mule hire, corn, hay, meat and drink, rent, wood, board and lodging, had by the said defendants of and from the said plaintiff.   Damages claimed, four hundred dollars. That unless you enter your appearance in said suit on or before the next February term of said court, commencing on the tenth day of February, A. D. 1879, judgment by default therein will be rendered against you.                    JOHN H. THOMPSON, Clerk.

"C. H. GILDERSLEEVE, for Plaintiff."

That at some term of the court below, in 1880,—but which term of that year the record does not disclose,—judgment by default to ap-

pear was rendered against said Hinds, Kirk, Fisher, and McDonaugh, and the damages of the plaintiff assessed by a jury at $373.50, and judgment in *assumpsit* rendered for that sum and costs, in favor of the plaintiff, Montoya. At the February term of the court below for 1879, the plaintiff, Montoya, filed allegations in the garnishee proceedings against Smith, covering money, property, and effects belonging to the defendants, in his hands or under his control, and at the same term filed and exhibited appropriate interrogatories touching any property, effects, and credits of the defendants in the hands of said garnishee. Some of the answers of the garnishee to the interrogatories were traversed by the plaintiff, Montoya, and upon the issues thus joined a trial was had before a jury, whereby the following facts, among others, seem to have been established:

That on the fourteenth day of November, 1878, the defendants in this "action of *assumpsit,* by the name of the Fisher Stage-line Company, by Jerome J. Hinds, president and general manager," executed to the garnishee, Smith, a chattel mortgage covering all the property of defendants that subsequently came to the possession of said garnishee.

That the consideration of said mortgage purported on its face to be the sum of $2,500, to them at that date advanced by said Smith, the receipt whereof was thereby acknowledged by said defendants, and in the further consideration that said Smith should thereafter advance all money necessary to honor and pay all drafts then drawn and thereafter to be drawn for the benefit of said stage company, and to enable said Hinds, as such president and general manager, to carry on the business of said stage company.

That the conditions of said mortgage were that the same should be void if said company should pay, or cause to be paid to said Smith, said sum of $2,500, and all moneys advanced and paid by him on draft, or for the benefit of said company, *or otherwise.*

That the possession and control of the property covered by the mortgage to be in said Smith, but the said company to have the privilege of using and employing the same in its said business, with the understanding that if any other creditor *should attach the same,* or if any member of said company should attempt to remove or dispose of the same, then said Smith was to take the property from the hands of the company for his own use and disposal.

That, notwithstanding the said recitals in the mortgage, no moneys had been advanced to said company at the time of the execution and delivery of the mortgage, or prior thereto.

That from the time of the execution and delivery of the mortgage on the fourteenth of November, 1878, up to the time said Smith was summoned as garnishee, on the twenty-seventh of December of the same year, he had altogether advanced to said company not to exceed the sum of $300, but that he had obligated himself under the terms

of the mortgage to pay upwards of $4,000. Up to that date it does not appear how he had obligated himself to pay that sum in the aggregate, except the general obligation under the mortgage to make future advances, except it may be some $500 which he obligated himself to pay by indorsement of a draft drawn on the company in Washington, by said Hinds, in favor of the Second National Bank of Santa Fe, and another draft between the same parties, but not indorsed by Smith, in the sum of $1,000, which he claims he became obligated to pay through some parol agreement and taking charge of the company's stock. For what particular purpose these drafts were drawn does not clearly appear.

That Smith, after he had been summoned as garnishee, and before answering the interrogatories propounded in the garnishee proceedings against him, had property of said company in his possession under said mortgage, the value of which was much more than enough to satisfy the judgment rendered in favor of the plaintiff, Montoya.

A trial was had on the issues joined in the garnishee proceedings, resulting in a judgment against Smith, as garnishee, in the sum of $424 and costs.

A multitude of errors are assigned upon the record, only a few of which, based upon the foregoing statement of the case, do we deem it necessary to notice. The first question of importance raised is as to whether the court below had acquired jurisdiction to render a judgment in favor of the plaintiff, Montoya, against Hinds *et al.*, in the action of *assumpsit*, and to order a sale of attached property. As no judgment could be legally rendered against Smith, as garnishee, until after judgment had been rendered against the defendants in the action in which he was summoned as garnishee, it follows that the garnishee had the right as a matter of defense to show either by the record, or, if the record was silent, by other competent proofs, that the judgment was void for want of jurisdiction. Upon the trial between the plaintiff and garnishee the plaintiff offered in evidence the record of the judgment alone rendered by default in his favor and against Hinds *et al.* This was objected to on the ground that there was nothing in the record as presented showing that the court had acquired jurisdiction.

This objection was prematurely raised and properly overruled at the time, since the jurisdiction of a court of general jurisdiction will be presumed from the judgment itself, though the record does not recite the fact conferring jurisdiction. 8 How. 586; 2 Wall. 358; 16 How. 65; 30 Cal. 439. But this presumption does not arise when the record of the entire case discloses a want of jurisdiction. 8 Cal. 562. And the question here presents itself whether other parts of the record did not disclose facts showing affirmatively that the court had not acquired jurisdiction to render the judgment it did against Hinds and his co-defendants.

The act of 1874, (Prince, St. 133,) in regard to the service of cita-

tions by publication, did not change the law then in force as to the form and substance of published notices in attachment proceedings. That act expressly prescribes that the notice therein provided for "shall conform as far as practicable, in form, *time, and substance*, to the laws governing publication in causes of attachment." This language is clearly inconsistent with the assumption that the legislature intended to change the form and substance of the notice in attachment proceedings. It is true that the act itself prescribes a form of notice; but it is quite evident, from the tenor of the whole act, including the form of notice prescribed, that its provisions were intended as an addition to the notice in attachment proceedings, and to cover only citations by publication in ordinary actions at law and suits in chancery.

Among the necessary parts of the notice to be published in attachment proceedings under the Kearney Code, was a notice to the defendant that "his property had been attached," and that "unless he appeared, etc., judgment would be rendered against him, and his property sold to satisfy the same." Prince, St. § 11, p. 138. This requirement has never been repealed by subsequent legislation. The act of 1862 merely changed the law as to the officers or persons authorized to make publication. Id. § 36, p. 143. While the aforesaid act of 1874 makes another change, by conferring the authority on the clerk of the court, and, in addition to the previous law as to attachments, as already stated, providing for citation on non-residents by publication in ordinary actions at law and suits in chancery, the record discloses the fact that the only notice to the non-resident defendants, Hinds *et al.*, was the notice already set out in full in the statement of the case. This contains no notice to the defendants that their property had been attached, nor that such property would be sold to satisfy the judgment that would be rendered against them on their failure to appear as therein cited. These constituent parts of the notice, as provided by statute, (Prince, St. § 11, p. 138,) are certainly material, and their omission—the defects not having been cured by a voluntary appearance of the defendants—renders the notice ineffectual and void.

As a citation and notice to non-resident defendants by publication is in derogation of the common-law mode of personal service, the statutory requirements as to what the notice shall contain must be strictly complied with. Unless this is done in the case of non-resident debtors who do not appear, the court acquires no jurisdiction for any purpose whatever as against them or their property. Even in proceedings *in rem* against the property of non-resident debtors, the citation by publication or otherwise to the defendant, as expressly provided by law, must be given, whereby they may have their day in court, otherwise the court will acquire no jurisdiction or authority to adjudge a sale of their property to satisfy their debts. Even when citation and notice by publication in the mode provided by statute is

given to a non-resident defendant who does not appear, no valid *personal* judgment can be rendered against him. 95 U. S. 714. In such case, if the non-resident defendant has property within the territorial jurisdiction of the court, the same may be reached by attachment properly instituted, and the court, upon seizure of the property under the writ of attachment and proper notice by publication, so far acquires jurisdiction of the property, as a proceeding *in rem*, as to ascertain the pecuniary obligations of the defendant, and to apply the proceeds of the attached property in satisfaction of the same. Id.

We have a statute substantially to the same effect, which is as follows: "When the defendant shall be notified by publication as aforesaid, and shall not appear and answer the action, judgment by default may be entered, which may be proceeded to final judgment as in ordinary actions, but such judgment *shall only bind* the property attached, and shall be no evidence of indebtedness against the defendant in any subsequent suit." Prince, St. § 12, p. 138.

This is all the court could do in any event in the present case. Everything, therefore, relating to jurisdiction depends upon the regularity and sufficiency of the attachment proceedings. As the proper citation and notice were not published, it follows that the court below had acquired no authority to adjudge a sale of the attached property to satisfy the plaintiff's demand; and as a legal judgment against the attached property was a necessary prerequisite to a valid judgment against the garnishee, it further follows that the final judgment rendered against the garnishee, Smith, was premature and unauthorized.

Several errors are assigned on the charge of the court to the trial jury, only one of which do we deem it necessary to notice. Among other things the court said to the jury as follows: "Smith says, by way of defense, that the property he held of Hinds' was held under a mortgage, and he puts this mortgage in evidence. If this mortgage is a valid one, and covers the property which is claimed to have been garnished in Smith's hands, and Smith has not received from the property received therefor enough money to cover the total amount secured by said mortgage, then he is not responsible in any sum to the plaintiff. If said mortgage was not valid, then, of course, it is no defense." This part of the charge was objected to on the ground that, as to the mortgage, it only submitted to the jury the question of its validity. The objection being overruled the same was excepted to. This submission to the jury of the validity of the mortgage, without submitting the facts on which its validity or invalidity must be determined, was error, that was well calculated to confuse and mislead the jury. The tenor and terms of the mortgage, and what transpired under it, were sufficient to cast grave suspicions on it as to the *bona fides* of the transaction. The only ground on which the mortgage could be attacked was that of fraud in making a disposition of the property with the view of hindering or delaying the creditors of the

defendants Hinds *et al.* in the collection of their demands. The fact that the mortgage was given to secure future advances, if drawn in good faith, was not objectionable. But the question of bad faith may be properly raised in all such cases, and especially where the mortgage is interposed as a shield against attaching creditors. 1 Pet. 387; 4 Pet. 306; 7 Cranch, 34; 23 How. 14. The questions of fact as to the *bona fides* and the purpose of the mortgage ought to have been submitted to the jury as a prerequisite to the determination of its validity.

Judgment reversed, and the cause remanded to the court below, with instructions to grant leave to the plaintiff to proceed to a proper citation of the defendants Hinds *et al.*, and to proper proceedings thereon, and thereupon to proceed with a new trial between the plaintiff and the garnishee, Smith; the defendant in error to recover his costs.

(All concur.)