[S. F. No. 7980. In Bank.—May 8, 1919.]

## STELLA VARCOE, Respondent, v. CUYLER LEE et al., Appellants.

[1] NEGLIGENCE—DEATH OF CHILD—AUTOMOBILE COLLISION—SPEED OF MACHINE—ABILITY TO . STOP—EVIDENCE.—In an action by a father to recover damages suffered through the death of his child, resulting from her being run over by an automobile while she was endeavoring to cross a city street, evidence that the machine was brought to a stop within ten feet after it struck the child, and that a machine of the weight of that involved could not be brought to a stop in ten feet if it were proceeding more than ten miles per hour, does not justify the setting aside of the verdict for the plaintiff, on the ground that it demonstrates that the automobile was not traveling at a negligent rate of speed, since the jury may have disbelieved that the car came to a stop in ten feet, or that it could not be stopped within that distance if traveling more than ten miles per hour, or it may have disbelieved both propositions.

[2] ID.—RUNNING OF CHILD ACROSS STREET — CONTRIBUTORY NEGLIGENCE—QUESTION OF FACT.—In such action, the fact that the child after waiting for some wagons and a street-car to pass, started to run across the street instead of walking, does not justify the taking from the jury the question as to whether her conduct amounted to contributory negligence, particularly in view of her youth.

[3] ID.—EXCESSIVE DAMAGES — POWER OF APPELLATE COURT.—The power of the appellate court over excessive damages exists only when the facts are such that the excess appears as a matter of law, or is such as to suggest at first blush, passion, prejudice, or corruption on the part of the jury.

[4] APPEAL—JUDICIAL NOTICE.—An appellate court can properly take judicial notice of any matter of which the court of original jurisdiction may properly take notice.

[5] ID.—ACTUAL KNOWLEDGE OF JUDGE—NECESSITY OF PROOF.—Actual knowledge by a trial judge of a fact, and that the fact is indisputable, does not justify him in taking judicial notice thereof, unless the fact is also a matter of common knowledge.

[6] ID.—"JUDICIAL NOTICE" DEFINED.—Judicial notice is a judicial short-cut, a doing away with the formal necessity for evidence because there is no real necessity for it.

[7] ID.—MATTERS OF GENERAL KNOWLEDGE—JUDICIAL NOTICE—USED WITH CAUTION.—The power of judicial notice is, as to matters claimed to be matters of general knowledge, one to be used with caution, and if there is any doubt whatever either as to the fact

itself or as to its being a matter of common knowledge evidence should be required.

[8] ID.—FACT OF GENERAL KNOWLEDGE AND NOTORIETY—NONPRODUC-TION OF EVIDENCE—TESTS.—The tests in any particular case where it is sought to avoid or excuse the production of evidence because the fact to be proven is one of general knowledge and notoriety are, first, is the fact one of common, every-day knowledge in that juris-diction, which everyone of average intelligence and knowledge of things about him can be presumed to know, and, second, is it cer-tain and indisputable.

[9] ID.—MATTER OF JUDICIAL COGNIZANCE — PROOF — PROCEDURE NOT IMPROPER.—There is no error or impropriety in requiring evidence, even if the matter be one of judicial knowledge.

[10] ID.—JUDICIAL NOTICE — BUSINESS PORTION OF STREET — INSTRUC-TION.—In an action tried in the city and county of San Francisco for damages for the death of a child from being run over by an automobile driven at a negligent rate of speed on that portion of Mission Street between Twentieth and Twenty-second Streets, the court is entitled to take judicial notice that that portion of Mission Street is a business district, it being a matter of every-day common information and experience to the residents of such city and county, and there is no error in instructing the jury that the location of such accident is in a business district.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Daniel C. Deasy, Judge. Affirmed.

The facts are stated in the opinion of the court.

Redding, Boalt & Pier, John T. Ryan, Joseph D. Redding and Fletcher G. Flaherty for Appellants.

Marcel E. Cerf, C. H. Sooy, H. W. Glensor and William F. Herron for Respondent.

U. S. Webb, Attorney-General, Albert Lee Stephens, City Attorney, Los Angeles, Wm. P. Mealey, Deputy City Attorney, Los Angeles, George Lull, City Attorney, San Fran-cisco, Maurice T. Dooling, Jr., Assistant City Attorney, San Francisco, John W. Stetson, David R. Faries and Ivan Kelso, *Amici Curiae.*

OLNEY, J.—This is an action by a father to recover dam-ages suffered through the death of his child, resulting from

her being run over by an automobile of the defendant Lee, driven at the time by the other defendant, Nichols, the chauffeur of Lee.   The automobile was going south on Mission Street in San Francisco and was approaching the crossing of Twenty-first Street when the child, in an endeavor to cross the street, was run over and killed.   The cause was tried before a jury, which returned a verdict of five thousand dollars for the plaintiff.   From the judgment upon this verdict the defendants appeal.

The alleged negligence upon which plaintiff's right to recover is predicated consisted in the speed at which it is claimed the automobile was proceeding.   In the opening brief for the appellants it was contended first, that the evidence demonstrated that the automobile was not proceeding at a negligent rate of speed; second, that the child was guilty of contributory negligence; and, third, that the amount of damages is excessive.   None of these contentions requires particular consideration.

[1]   The contention that the evidence demonstrated that the machine was not traveling at a negligent rate of speed is based on testimony that it was brought to a check stop ten feet after it struck the child, and that a machine of the weight of that involved could not be brought to a stop in ten feet if it were proceeding more than ten miles an hour.   On the other hand, there was testimony that the machine was going at a high rate of speed, from thirty to forty miles an hour.   It cannot be said that the testimony relied on *demonstrates* a speed of ten miles or less, so that the verdict of the jury to the contrary must be set aside, assuming that a speed of ten miles an hour could not under the circumstances of the case be considered negligence.   The jury may well have disbelieved either that the car came to a stop in ten feet, or that it could not be stopped within that distance if traveling more than ten miles an hour, or it may have disbelieved both propositions.

[2]   The claim that the child was guilty of contributory negligence is based on the fact that she ran across the street instead of walking and was looking the other way when she got in front of the car.   There was testimony that she was seen waiting on the left-hand side of the street, with relation to the chauffeur, for some wagons and a street-car going north to pass, and that as soon as they passed she started to run across the street.   Not improbably she ran across think-

ing it the safest way to get across. Certainly, there is nothing to justify taking from the jury the question as to whether or not her conduct amounted to contributory negligence, particularly in view of her youth.

[3]  As to the claim that the verdict of five thousand dollars is excessive, "our power over excessive damages exists only when the facts are such that the excess appears as a matter of law, or is such as to suggest at first blush, passion, prejudice or corruption on the part of the jury." (*Bond* v. *United Railroads,* 159 Cal. 270, 286, [Ann. Cas. 1912C, 50, 48 L. R. A. (N. S.) 687, 113 Pac. 366, 373].)  The present case hardly comes within this rule.

In appellant's reply brief a further question is raised for the first time.  As we have stated, the claim of negligence is based upon the speed at which the machine was going.  On this point the testimony was sharply conflicting.  The plaintiff offered, and the court over the objection of the defendants admitted, a copy of the San Francisco traffic ordinance specifically providing that Mission Street between certain limits, which include the point of accident, is a heavily traveled street and the speed of vehicles shall not exceed fifteen miles an hour.  When he came to charge the jury, the trial judge instructed them that if they found that the defendant Nichols was running the automobile along Mission Street at the time of the accident at a greater speed than fifteen miles an hour, he was violating the city ordinance and also the State Motor Vehicle Act and that such speed was negligence in itself.  The trial judge then read to the jury the portion of subdivision B of section 22 of the Motor Vehicle Act, which provides that it shall be unlawful to operate a motor "in the business district" of any incorporated city or town at a greater speed than fifteen miles an hour, and defines a business district as "territory . . . contiguous to a public highway, which is at that point mainly built up with structures devoted to business."  Having read this definition, the court proceeded with its charge as follows: "That is the situation on Mission Street between Twentieth and Twenty-second Streets where this accident happened, so that is a business district and the maximum legal rate of speed on that street at the time of the happening of this accident was fifteen miles an hour."

In connection with the admission in evidence of the ordinance mentioned, and the giving of the foregoing instructions,

it is contended by appellant, first, that the state law superseded the municipal ordinance and rendered the latter inapplicable; and, second, that the instruction that Mission Street at the point in question was a business district, and therefore the maximum legal speed there was fifteen miles an hour was a charge as to a question of fact and an invasion of the province of the jury.

On the first point, as to whether or not the state law superseded and rendered inoperative the city ordinance, elaborate briefs have been filed by third parties interested in the question so presented. By reason, however, of our views upon the second point we need not decide it. It is manifest that the jury was not concerned with the reason why a speed in excess of fifteen miles an hour was illegal. They were concerned only with the proposition that it was in truth illegal. If it were, they were not misled in the discharge of their function, no matter how erroneous the reason given may have been.

The situation is that either the city ordinance or the state law applies, or both. If the ordinance applies, either alone or concurrently with the state law, no question arises, for the provisions of the ordinance specifically cover the place of accident. If it does not apply, but the state law does exclusively, and under the latter's provisions a speed at the point of accident in excess of fifteen miles an hour was illegal, there was still no prejudicial error. We are brought, therefore, to the second point, that the trial judge erred in charging the jury that the location of the accident was in "a business district" as those words are defined in the state act, with the consequent result that fifteen miles an hour was the maximum legal speed.

So far as the record itself goes, there is little to show what the character of Mission Street between Twentieth and Twenty-second Streets is. The defendant, Nichols, himself, refers to it in his testimony as part of the "downtown district," undoubtedly meaning thereby part of the business district of the city. The evidence shows incidentally that at the scene of the accident there was a drugstore, a barbershop, a haberdashery, and a saloon. If there had been any issue or question as to the character of the district, the record in this meagre condition would not justify the taking of the question from the jury, as was undoubtedly done by the instruction complained of.

The actual fact of the matter is, however, that Mission Street between Twentieth and Twenty-second Streets is a business district within the definition of the Motor Vehicle Act beyond any possibility of question. It has been such for years. Not only this, but its character is known as a matter of common knowledge by anyone at all familiar with San Francisco. Mission Street from its downtown beginning at the waterfront to and beyond the district of the city known as the Mission is second in importance and prominence as a business street only to Market Street. The probabilities are that every person in the courtroom at the trial, including judge, jury, counsel, witnesses, parties and officers of the court, knew perfectly well what the character of the location was. It was not a matter about which there could be any dispute or question. If the court had left the matter to the determination of the jury, and they for some inconceivable reason had found that it was not a business district, it would have been the duty of the court to set aside the verdict. We are asked now to reverse the judgment because the court assumed without submitting to the jury what could not be disputed, and what he and practically every resident in the county for which the court was sitting knew to be a fact. If error there was, it is clear that upon the actual fact there was no prejudice to the defendants.

It would have been much better if counsel for the plaintiff or the trial judge himself had inquired of defendants' counsel before the case went to the jury whether there was any dispute as to the locality being a business district within the meaning of the state law. There could have been but one reasonable answer, and if any other were given, the matter could have been easily settled beyond any possibility of question. But this was not done, and we are now confronted by the question whether either this court or the trial court can take judicial notice of the real fact.

[4] An appellate court can properly take judicial notice of any matter of which the court of original jurisdiction may properly take notice. (*Pennington* v. *Gibson,* 16 How. 65, [14 L. Ed. 847, see, also, Rose's U. S. Notes] ; *Salt Lake City* v. *Robinson,* 39 Utah, 260, [Ann. Cas. 1913E, 61, 35 L. R. A. (N. S.) 610, 116 Pac. 442] ; 15 Ruling Case Law, 1063.)

In fact a particularly salutary use of the principle of judicial notice is to sustain on appeal a judgment clearly in favor of the right party, but as to which there is in the evi-

dence an omission of some necessary fact which is yet indisputable and a matter of common knowledge and was probably assumed without strict proof for that very reason. (*Campbell* v. *Wood*, 116 Mo. 196, [22 S. W. 796].)

The question, therefore, is, Was the superior court for the city and county of San Francisco, whose judge and talesmen were necessarily residents of the city, entitled to take judicial notice of the character of one of the most important and best-known streets in the city? If it were, the court was authorized to charge the jury as it did. (Code Civ. Proc., sec. 2102.)

[5] It should perhaps be noted that the fact that the trial judge knew what the actual fact was and that it was indisputable would not of itself justify him in recognizing it. Nor would the fact that the character of the street was a matter of common knowledge and notoriety justify him in taking the question from the jury if there were any possibility of dispute as to whether or not that character was such as to constitute it a business district within the definition of the statute applicable. If such question could exist, the fact involved— whether the well-known character of the street was sufficient to make it a business district—was one for determination by the jury. But we have in this case a combination of the two circumstances. In the first place, the fact is indisputable and beyond question. In the second place, it is a matter of common knowledge throughout the jurisdiction in and for which the court is sitting.

A consideration of the reasons underlying the matter of judicial notice and its fundamental principles leaves, we believe, but little doubt as to its applicability here. [6] Judicial notice is a judicial short-cut, a doing away with the formal necessity for evidence because there is no real necessity for it. So far as matters of common knowledge are concerned, it is saying there is no need of formally offering evidence of those things because practically everyone knows them in advance and there can be no question about them. The rule in this respect is well stated in 15 R. C. L. 1057, as follows:

"It may be stated generally with regard to the question as to what matters are properly of judicial cognizance that, while the power of judicial notice is to be exercised with caution, courts should take notice of whatever is or ought to be generally known, within the limits of their jurisdiction, for

justice does not require that courts profess to be more ignorant than the rest of mankind. This rule enumerates three material requisites: 1. The matter of which a court will take judicial notice must be a matter of common and general knowledge. The fact that the belief is not universal, however, is not controlling, for there is scarcely any belief that is accepted by everyone. Courts take judicial notice of those things. which are common knowledge to the majority of mankind, or to those persons familiar with the particular matter in question. But matters of which courts have judicial knowledge are uniform and fixed, and do not depend upon uncertain. testimony; as soon as a circumstance becomes disputable, it ceases to fall under the head of common knowledge, and so will not be judicially recognized. 2. A matter properly a subject of judicial notice must be 'known,' that is, well established and authoritatively settled, not doubtful or uncertain. In every instance the test is whether sufficient notoriety attaches to the fact involved as to make it safe and proper to assume its existence without proof. In harmony with that view it has been said that courts must 'judicially recognize whatever has the requisite certainty and notoriety in every field of knowledge, in every walk of practical life.' 3. A matter to be within judicial cognizance must be known 'within the limits of the jurisdiction of the court.' ''

The three requirements so mentioned—that the matter be one of common and general knowledge, that it be well established and authoritatively settled, be practically indisputable, and that this common, general and certain knowledge exist in the particular jurisdiction—all are requirements dictated by the reason and purpose of the rule, which is to obviate the formal necessity for proof when the matter does not require proof.

.[7] It is truly said that the power of judicial notice is as to matters claimed to be matters of general knowledge one to be used with caution. If there is any doubt whatever either as to the fact itself or as to its being a matter of common knowledge evidence should be required. But, if the court is of the certain opinion that these requirements exist, there can properly be no hesitation. In such a case there is on the one hand no danger of a wrong conclusion as to the fact— and such danger is the reason for the caution in dispensing

with the evidence—and on the other hand, purely formal and useless proceedings will be avoided.

Little assistance can be had by a search of the authorities for exactly similar cases. The one perhaps nearest to it that we have found is *State* v. *Ruth,* 14 Mo. App. 226. What may be a proper subject of judicial notice at one time or place may not be at another. It would be wholly unreasonable to require proof, if the fact became material, as to the general location in the city of San Francisco of its city hall before a judge and jury made up of residents of that city and actually sitting in the building. But before a judge and jury in another county, proof should be made. The difference lies in the fact being one of common knowledge in one jurisdiction and not in the other. Similarly it has been held repeatedly that courts will judicially notice the general doctrines of any religious denomination prevalent within its jurisdiction, and yet it was held by an Ohio court, and properly held, in the early days of Christian Science that notice would not be taken of the doctrines of that sect. (*Evans* v. *State,* 9 Ohio St. C. Pl. Dec. 222, 6 Ohio N. P. 129.) Now that the sect has grown to large numbers and its general doctrines are a matter of common knowledge, it is as proper to notice them as to notice those of older denominations. As is well said by Wigmore (4 Wigmore on Evidence, sec. 2580) : ''Applying the general principle (*ante,* sec. 2565), especially in regard to the element of notoriousness, courts are found noticing, from time to time, a varied array of unquestionable facts, ranging throughout the data of commerce, industry, history and natural science. It is unprofitable, as well as impracticable, to seek to connect them by generalities and distinctions; for the notoriousness of a truth varies much with differences of period and of place. It is even erroneous, in many if not in most instances, to regard them as precedents. It is the spirit and example of the rulings, rather than their precise tenor, that is to be useful in guidance.''

[8] The tests, therefore, in any particular case where it is sought to avoid or excuse the production of evidence because the fact to be proven is one of general knowledge and notoriety are (1) is the fact one of common, everyday knowledge *in that jurisdiction,* which everyone of average intelligence and knowledge of things about him can be presumed to

know; and (2) is it certain and indisputable. If it is, it is a proper case for dispensing with evidence, for its production cannot add or aid. On the other hand, we may well repeat, if there is any reasonable question whatever as to either point, proof should be required. Only so can the danger involved in dispensing with proof be avoided. [9] Even if the matter be one of judicial cognizance, there is still no error or impropriety in requiring evidence.

[10] Applying this test to the facts of the case the matter is not in doubt. The character of Mission Street is as well known to San Franciscans as the character of Spring Street to residents of Los Angeles, or of State Street to residents of Chicago, or of Forty-second Street to residents of New York, or of F Street to residents of Washington. It is a matter of their every-day common information and experience, and one about which there can be no dispute.

The conclusion follows that the charge of the trial court that Mission Street between Twentieth and Twenty-second Streets was a business district was not error. The judgment is therefore affirmed.

Shaw, J., Lennon, J., Lawlor, J., Melvin, J., and Wilbur, J., concurred.

ANGELLOTTI, C. J., Concurring.—I concur in the judgment, and also in the opinion except upon the question of judicial notice, a determination of which question appears to be considered by the majority opinion as essential to a conclusion that the trial court did not err in instructing the jury that Mission Street at Twenty-first Street was a "business district" within the meaning of the provision of the Motor Vehicle Act limiting speed in such a district to not exceeding fifteen miles an hour. I am not satisfied that the opinion does not carry the doctrine of judicial notice to an unwarranted extent. It seems to me, after a careful consideration of the record, that the instruction referred to may fairly be upheld upon the theory that there was no question in the trial court as to the place of the accident being within such a district and that this was something practically conceded on all hands. Certainly every scrap of evidence tending to throw any light whatever on the matter so tended to show, and the

trial court apparently took the matter as granted. No complaint whatever was made as to these instructions until the closing brief of appellants was filed in this court. I do not think they should now be held erroneous.