[Civ. No. 3470. Third Appellate District.—May 2, 1928.]

RICHARD WATKINS, Appellant, v. PENSION BOARD OF THE CITY OF SACRAMENTO et al., Respondents.

Busick & Leeper for Appellant.

Robert L. Shinn, City Attorney, for Respondents.

PLUMMER, J.—This cause is before us upon an appeal from a judgment of the trial court denying the petitioner a writ of mandate to compel the defendants to grant to plaintiff a pension in the sum of $1,650 per annum, payable in monthly installments.

The record before us shows that for a period exceeding twenty-one years prior to the first day of April, 1912, the petitioner had been continuously employed by the City of Sacramento as a member of the fire department thereof, and for more than one year prior to the first day of April, 1912, had been employed in the fire department of said city under the title and in the capacity of "Superintendent of the Fire Alarm System." That for more than one year preceding the said first day of April, 1912, the petitioner had received a salary in the sum of $1,800 per year, payable at the rate of $150 per month. That on the first day of April, 1912, the petitioner was retired on account of disability and granted a pension in the sum of $900 per year, payable monthly at the rate of $75 per month and the petitioner was then and there placed on the pension roll of the fire department of the City of Sacramento, and has since said date been receiving a pension in the sum of $75 per month.

In the year 1911 the City of Sacramento adopted a new charter, which became effective shortly after the retirement

of the petitioner herein, as just stated, in the year 1912. By this charter the position of superintendent of the fire-alarm system was discontinued, and all the duties theretofore performed by the superintendent of the fire-alarm system were provided to be performed by a person occupying the position of city electrician. That thereafter, and by a charter adopted by said city in November, 1920, and which became effective June 30, 1921, the office of city electrician was discontinued, and the duties theretofore performed by the person occupying the position as city electrician were consolidated with, and provided to be performed by a person designated as the city engineer, or under his supervision and direction. That thereafter, in accordance with section 16 of the charter of the City of Sacramento, an ordinance was duly passed by the city council of the City of Sacramento establishing the office of city electrician, to be paid a salary in the sum of $3,300 per annum, payable in equal monthly installments. Upon this state of facts the petitioner alleges that he is entitled to a pension in the annual sum of $1,650, payable in equal monthly installments. The facts which we have just set forth all appear by the petition filed herein, to which the defendants interposed a demurrer, which was sustained, and judgment thereafter entered for the respondents.

The contention is here made that the city electrician of the City of Sacramento is now an officer of the same rank formerly held by the petitioner as superintendent of the city fire-alarm system; that the city electrician is performing the same duties, and, therefore, under the decisions of this court in the cases of *Klench* v. *Board of Pension Fund Commissioners of the City of Stockton*, 79 Cal. App. 171 249 Pac. 46], *Douglas* v. *Pension Board of the City of Sacramento*, 75 Cal. App. 335 [242 Pac. 756], and *Aitken* v. *Roche et al.*, 48 Cal. App. 753 [192 Pac. 464], is entitled to an annual pension equal to one-half of the salary now paid to the city electrician of the City of Sacramento. On the part of the respondents it is contended that there is now no office corresponding to that of superintendent of the fire-alarm system; that the duties performed by such officer prior to the adoption of the city charter of the City of Sacramento which became effective in 1912, were consolidated with other duties to be performed by an officer named

in the charter, and that there is no similarity between the rank and duties performed by the petitioner as superintendent of the fire-alarm system and that provided to be performed by the city electrician, and later placed under the charge of the city engineer's department of the City of Sacramento, and hence, no standard by which the court could fix the amount of increased pension, if any, to which the petitioner herein would be entitled. It is admitted by counsel for both petitioner and respondent that the petitioner has a vested right to a pension in the sum of $75 per month, and became possessed of such right upon his retirement in such a manner that subsequent charters could not take away that right.

The only question which we are really called upon to decide in this case is whether, under the varying changes of the city charter and the consolidation of offices and the attaching of the duties performed by the petitioner to other offices, effected a change of salary belonging to an officer of the rank of superintendent of the fire-alarm system of the City of Sacramento as it existed at the time of the petitioner's retirement? If there has been simply a change in name the petitioner is entitled to an increase in his annual pension, but if, on the other hand, there has been a consolidation of offices, or rather, if the duties and responsibilities connected with the office of superintendent of fire-alarm system have been attached to and made a part of the duties and responsibilities of some other office, then and in that case the petitioner is not entitled to any increased pension. Or, to state the matter in another form: If other qualifications have been required of the person designated to perform the duties theretofore performed by the petitioner and additional services required to be performed by such officer, then and in that case there has been more than a mere change of name, namely, the creation of a distinct and separate office with which the duties formerly performed by the superintendent of the fire-alarm system are required to be performed by the officer having charge of the newly created office. With this in view, we will consider the charter provisions of the various charters to which we have referred. By the city charter, approved by the legislature in 1893 (Stats. 1893, page 595, section 152), it is specified that "there shall also be attached to the fire department a fire alarm system which

shall be under the immediate charge of a superintendent, who shall devote his entire time to the duties of his office.'' After setting forth how often the superintendent shall report to the chief engineer, the section further specifies: ''All electric light, or power, telegraph or telephone wires erected or maintained in the city shall be subject to the supervision and inspection of said superintendent and shall be located, laid, erected and maintained only in such manner as may be approved by him and so as not to endanger or interfere with the wires or apparatus of the fire alarm system.'' Nothing is said in this section relative to the qualifications of the superintendent of the fire-alarm system, whether he shall have had any practical knowledge of electrical engineering, or whether he shall be charged with the duty of enforcing any ordinances relative to the installation of electrical appliances, or whether he shall perform any duties in supervising the installing of electrical fixtures or wires conveying electrical energy to buildings or plants using the same in the City of Sacramento, or whether he shall exercise any duties in relation thereto, save and except to make sure that the stringing or laying of such wires shall be so done as not to interfere with the wires or apparatus of the fire-alarm system. A reading of the section makes it clear that the duties of the superintendent of the fire-alarm system were restricted to and circulated about the wires and apparatus constituting the fire-alarm system.

By section 99 of the charter of the City of Sacramento, ratified by the electors of said city in November, 1911, and which became effective in the year 1912 (Stats. 1911 [Ex. Sess.], page 332), in defining the duties pertaining to the commissioner of public works, it is specified: ''The commissioner presiding over the department shall appoint a city electrician, who shall be a practical, qualified electrician or electrical engineer, and such other assistants and subordinates as may be authorized by the city commission.'' Section 99 then sets forth that ''The city electrician shall have general charge and supervision over all municipal electric matters, and in particular shall have charge of the construction and maintenance of the fire and police systems. He shall have charge of the inspection of all electrical wires and appliances for furnishing light, heat or power in, under, over and upon the streets and buildings of the city, and

shall be charged with the duty of enforcing all ordinances, rules, regulations and requirements governing the installation and use of such wires and appliances." Other and additional duties are also particularly set forth and specified in the section, to be performed by the city electrician.

By sections 60 and 61 of the city charter of Sacramento, which became effective in 1921 (Stats. 1921, p. 1940), the duties theretofore performed by the officer designated as city electrician were attached to the office of city engineer and placed under the supervision of the city engineer. Those sections required that the city engineer shall be a civil engineer of not less than five years' practical experience; that he shall have charge of a number of duties, and perform certain functions therein set forth, among which is listed the construction and maintenance of fire and police alarm systems, enforcement of rules and regulations relative to installation of electric wires for furnishing heat, light or power, wiring of all buildings erected in the City of Sacramento, inspection of buildings, issuing permits for building operations in accordance with the rules and regulations as may be prescribed by ordinance, etc. Thereafter, and as we have stated, under the provisions of section 16 of the present city charter, the office of city electrician was created, and all the duties which we have set forth herein as required to be performed by the city electrician under the charter of 1911, and as required by the charter of 1921, and the ordinances passed in pursuance thereof, were attached to and made the duties of the city electrician.

If the same office, or if an office identical, save and except in name, as that of superintendent of the fire-alarm system, had been maintained all through the various transmutations of the charters of the City of Sacramento, it may be admitted that the petitioner would be entitled to a pension in the sum of one-half of the annual salary paid for the performance of such duties, even though there had been a change in the name or designation of the officer performing the same. The *résumé* of the different charter provisions which we have herein set forth establishes that there has been much more than a change in name of an official designation. In the first place, qualifications have been required which were not attached to, or required to be possessed by the superintendent of the fire-alarm system

under the city charter of 1893. The growth of the city, of which we must take judicial knowledge, and also the rapid increase in the use of electrical appliances, and the more extensive use of electrical power necessitated not merely a change in name, but the creation of an entirely new and distinct office, to which should be attached experience, learning and qualifications entirely different and additional to those which were necessary in 1893. Not only was the city electrician provided for in the charter adopted in 1911, required to possess the additional experience, qualifications and learning, but he was also required to perform additional and different duties, and there is no standard or measuring-stick by which it is possible to determine just how much of the salary earned or paid to the city electrician was for what we may appropriately call the simpler duties attached to the office of superintendent of the fire-alarm system and required to be performed by such officer. Again, by the charter adopted in 1921, it is reasonable for us to assume that the growth of the city, and the still greater extended use of electrical power, induced the placing of the supervision of all appliances relating thereto under the general direction of the city engineer, with a subordinate officer named a city electrician, with still greater and more extensive administrative powers as well as duties. Here, again, we are confronted with the impossibility of ascertaining what portion of the compensation now paid to the officer or person who may be occupying the position or rank of city electrician, is paid to him by reason of his supervision of the fire-alarm system of the City of Sacramento.

In view of what we have stated relative to the changes of the city charter of the City of Sacramento, and the changes and additions relative to the duties to be performed by the different officers named therein, we cannot very well perceive how any of the cases relied upon by petitioner are applicable to the issues here presented. The office or rank of superintendent of the fire-alarm system of the City of Sacramento does not exist. The duties once performed by the person so designated are now discharged by an officer having other duties to perform. This is more than a mere change in names, and therefore the record does not show that the petitioner is entitled to any increased pension. It being conceded by the respondent that the peti-

tioner has a vested right in the pension now paid him, that subject is not inquired into.

The judgment of the trial court is affirmed.

Tuttle, J., *pro tem.*, and Hart, Acting P. J., concurred.