[Crim. No. 24. Fourth Appellate District.—June 28, 1930.]

THE PEOPLE, Respondent, v. HARRY TOSSETTI, Appellant.

Hert & Mussell for Appellant.

U. S. Webb, Attorney-General, Frank Richards, Deputy Attorney-General, George H. Johnson, District Attorney, and James L. King, Deputy District Attorney, for Respondent.

BEAUMONT, J., *pro tem.*—Defendant was charged by an information filed in the superior court of San Bernardino County with a misdemeanor, possessing intoxicating liquor. Upon trial he was convicted. Motions in arrest of judgment and for a new trial were made in his behalf. These were denied, and judgment pronounced. From the judgment and from the order denying motion for new trial he has now appealed.

Appellant bases his plea for reversal solely upon the ground of lack of jurisdiction of the trial court. Section 1425 of the Penal Code, as amended in 1929 (Stats. 1929, p. 861), defines the jurisdiction of justice courts in

criminal cases. It provides that in "judicial townships, having a population of thirty thousand or more, said court shall have jurisdiction in all criminal cases amounting to a misdemeanor only. . . . " Appellant's contention is grounded on the foregoing statute and the population of San Bernardino township, in which said township the evidence shows the offense was committed shortly after the 1929 amendment became effective. Although his position was, at the time of the hearing upon the motions, that it was a matter of common knowledge that the population of said township was in excess of 30,000, he offered certain affidavits in support thereof. These were received in evidence over the objection of incompetency and that they were merely expressions of opinion. These affidavits, although including certain opinions of affiants, contain statements of probative facts from which the inescapable conclusion of ultimate fact is that the township had upon the date in question a population in excess of 30,000.

Without consideration of the affidavits, we are convinced that the motion in arrest of judgment should have been granted. No provision was made in the statute for the method of determining the population. In *County of Los Angeles* v. *Justice's Court, Beverly Hills Tp.*, 208 Cal. 429 [281 Pac. 611, 612], the consent of the parties was given to the appointment of a referee, whose report, upon stipulation, was affirmed and the fact found. This was attempted to be done herein upon the hearing of said motion, but was objected to by the district attorney. It is the *fact* of population that gives jurisdiction. Immediately the township exceeds in population the limit fixed by statute jurisdiction exists. With that fact proved in a judicial proceeding, the court must exercise its jurisdiction. In the Beverly Hills case, *supra*, the court said: "The jurisdiction of the respondent courts depends upon the *fact* of there being the specified number of inhabitants within their respective territorial boundaries, and not upon any report or proclamation of the fact. (*People* v. *Wong Wang*, 92 Cal. 277, 280 [28 Pac. 270] ; *Puterbaugh* v. *Wadham*, 162 Cal. 611, 618 [123 Pac. 804].) That being true, it would seem to follow that when it is found by any proper mode of ascertainment that the various political subdivisions in which the respondent courts are located have the required population, the

respondent courts must entertain, consider and act in all those matters and causes falling within the jurisdiction prescribed by the present law.'' We are of the opinion that ''a proper mode of ascertainment'' of the fact of population in this case is judicial notice. Judicial notice is but a species of evidence, and when a fact is such a matter of common knowledge as hereinafter referred to, the court takes judicial notice thereof. San Bernardino township includes the city of San Bernardino and certain outlying territory. ■ In construction of statutes courts will take judicial notice of what is general knowledge within the limits of their jurisdiction. (*Varcoe* v. *Lee,* 180 Cal. 338, 344 [181 Pac. 223, 226]; *State* v. *Lincoln,* 101 Neb. 57 [162 N. W. 138]; *Riley* v. *Wallace,* 188 Ky. 471 [11 A. L. R. 337, 222 S. W. 1085].) It was a matter of common knowledge of the people within the jurisdiction of the court that the city of San. Bernardino alone had at the date in question more than 30,000 inhabitants and that the population of the township was so greatly in excess of that number that no adult person within its borders and reasonably conversant with the most general affairs would question it. Indeed, general knowledge of such a condition is evidenced by the following discussion:

''Mr. Hert (during the course of argument by counsel) : I presume you cannot and will not produce any counter-affidavits that this township has not 30,000?

''Mr. King: I cannot do that, and if I did do that it would be nothing more than my opinion. I am not saying to anybody that this township has not 30,000 inhabitants. I know it has, and we all know it has.

''Mr. Hert: I would suggest, that inasmuch as the district attorney admits that this township has a population of over 30,000, that it would be right and proper to enter into a stipulation in this court and settle this question once for all.

''Mr. King: I am not stipulating. I am simply stating a fact that we all know.

''Judge Leonard: I think we have reached the conclusion that the jurisdictional fact must appear, and that the motion in arrest of judgment ought to be granted. The evidence submitted by the affidavits shows that there is in San Bernardino township a population of over 30,000, and

we feel under counsel's statement that he has admitted that to be a fact, that it puts the case in exactly the same condition as the case that went before the Supreme Court where it was stipulated to. I don't know as there could be any difference between a stipulated fact and the statement of counsel in an argument that it is a fact."

The foregoing colloquy is not referred to as proof of the fact of population. The district attorney did not enter into any stipulation, nor did he intend to bind respondent by any expression of his opinion, as he made clear in further discussion, but it is indicative of the notoriety of the *fact*.

A search of authorities and text-books reveals that the scope of judicial notice has been widened in recent years. Prof. Wigmore says: "The doctrine of judicial notice contains the kernel of great possibilities, as yet not used, for improving the trial procedure in the courts of today" (5 Wigmore on Evidence, sec. 2583); and, after discussion of certain phases thereof, courts are advised as follows: "With these aspects of the principle in mind, a large field opens for reducing the tedious proof of notorious facts. The principle is an instrument of usefulness hitherto unimagined by judges. Let them make a liberal use of it; and thus avoid much of the needless failures of justice that are caused by the artificial impotence of judicial proceedings." "Judicial notice is a judicial short-cut," states Mr. Justice Olney in the case of *Varcoe* v. *Lee, supra,* "a doing away with the formal necessity for evidence because there is no real necessity for it." The case of *Varcoe* v. *Lee, supra,* is most illuminating on the doctrine of judicial notice and its application. In that case it is said, after quotations from Ruling Case Law: "The three requirements so mentioned—that the matter be one of common and general knowledge, that it be well established and authoritatively settled, be practically indisputable and this common, general and certain knowledge exist in the particular jurisdiction—all are requirements dictated by the reason and purpose of the rule, which is to obviate the formal necessity for proof when the matter does not require proof"; and thereafter is the following: "What may be a proper subject of judicial notice at one time or place may not be at another. It would be wholly unreasonable to require proof

in the city of San Francisco of a city hall before a judge and jury made up of residents of that city and actually sitting in the building. But before a judge and jury in another county, proof should be made. The difference lies in the fact being one of common knowledge in one jurisdiction and not in the other.''

This case meets all the above-mentioned tests. That the population of San Bernardino township upon the date in question was greatly in excess of 30,000 was well known to the inhabitants thereof. It was a matter of common, everyday knowledge in that jurisdiction, which everyone of average intelligence and knowledge of things about him could be presumed to know (*Varcoe* v. *Lee, supra*), and one about which there could be no dispute.

That ''an appellate court can properly take judicial notice of any matter of which the court of original jurisdiction may properly take notice,'' was stated in *Varcoe* v. *Lee, supra;* and the opinion of the court further is: ''In fact a particularly salutary use of the principle of judicial notice is to sustain on appeal, a judgment clearly in favor of the right party, but as to which there is in evidence an omission of some necessary fact which is yet indisputable and a matter of common knowledge and was probably assumed without strict proof for that very reason.'' We take it that it is just as important that a judgment should be reversed when it is rendered by a court having no jurisdiction of a cause. This was done in *People* v. *Wong Wang,* 92 Cal. 277 [28 Pac. 270]. There a motion in arrest of judgment was made, and the only ground noticed in the opinion was that the lower court had no jurisidiction of the offense charged. While other matters were discussed therein, the court invoked the doctrine of judicial notice, and there, as here, it was the ''fact'' of population that was involved and which determined jurisdiction. ■ The failure of a trial court to take judicial notice of a fact does not prevent an appellate court from giving proper effect thereto. (10 Cal. Jur. 698; *Rogers* v. *Cady,* 104 Cal. 288 [43 Am. St. Rep. 100, 38 Pac. 81].)

■ The fact that appellant requested that a referee should be appointed in accordance with the method followed in the Beverly Hills case, and that this was attempted to be done by the trial court, did not prevent that court

from taking judicial knowledge of what was a matter of general knowledge within its jurisdiction. Neither does that fact, nor does the fact that in *People* v. *Justice's Court of San Bernardino County,* 102 Cal. App. 675 [283 Pac. 854], wherein this court appointed a referee who found that the population of San Bernardino township on December 1, 1929, was in excess of 40,000, preclude this court from taking judicial notice herein. (In that proceeding the parties did not question the correctness of the findings of the referee.) ■ Courts may receive evidence regarding a fact about which they have judicial notice and there is no impropriety in their so doing. (*Varcoe* v. *Lee, supra.*)

Section 2580, Wigmore on Evidence, 2d ed., states: "Applying the general principle, especially in regard to the element of notoriousness, courts are found noticing from time to time a varied array of unquestionable facts. . . . " Said section concludes with the following: "It is the spirit and example of the rulings rather than their precise tenor, that is to be useful in guidance." While we recognize that it is generally not profitable to cite cases wherein judicial notice has been exercised, for each case depends upon its particular facts, still, to show the trend of modern decisions and "the spirit and example of the rulings," we present the following: "In September, 1907, the city of Seattle had a population of 242,000 according to the 'review of the resources and industries of Washington,' issued under the auspices of that state. At the time of the acceptance of the bid (1909) it had a population of *about 275,000.*" (Italics ours.) In that case (*Times Printing Co.* v. *Star Pub. Co.,* 51 Wash. 667 [16 Ann. Cas. 414, 99 Pac. 1040, 1042] the court apparently did not have any published report for the basis of the approximate population in 1909. *In re Simpson,* 62 Cal. App. 549 [217 Pac. 789, 792], states: "As shown by the record on appeal, the only fact proven or of which the court can take judicial notice, which has been altered since the former proceeding is that the population of Bakersfield has increased from approximately 12,000 inhabitants in 1913 to 18,000 in 1920." Some of the many instances wherein common knowledge is the basis for judicial notice follow: In the *Varcoe* v. *Lee* case the court took judicial notice that a certain section of the city of San Francisco was a business district and said:

"The character of Mission street is as well known to San Franciscans as the character of Spring street to residents of Los Angeles, or of State street to residents of Chicago, or of Forty-second street to residents of New York, or of F street to residents of Washington." "It is a matter of common knowledge that a zoning plan of the extent contemplated in the instant case cannot be made in a day, therefore, we may take judicial notice of the fact that it will take much time to work out the details of such a plan and that obviously it would be destructive of the plan if, during the period of its incubation, parties seeking to evade the operation thereof should be permitted to enter upon a course of construction which might progress so far as to defeat in whole or in part, the ultimate execution of the plan," was said in *Miller* v. *Board of Public Works,* 195 Cal. 477, 496 [38 A. L. R. 1479, 234 Pac. 381, 388]. Trial and appellate courts will judicially notice, as being a matter of general knowledge, regions from which bubonic plague originally came. (*Spreckels* v. *San Francisco,* 76 Cal. App 267 [244 Pac. 919].) "We may take judicial notice that Chino is a farming district of limited area and only sparsely settled," was the statement of the court in *Johnson* v. *Ulrey,* 201 Cal. 467 [257 Pac. 505, 510]. In *Collom* v. *Bloch,* 70 Cal. App. 33 [232 Pac. 486, 488], the court said regarding a statute requiring reduction of speed at street intersections when the driver's view is obstructed and in a business district that "the court will take judicial notice of the fact that both of these conditions existed at the point of the collision." *Reaugh* v. *Cudahy Packing Co.,* 189 Cal. 335 [208 Pac. 125, 127], notices judicially that certain streets in Los Angeles at certain hours of the day are "usually congested with pedestrians and vehicular traffic of all kinds." *Watkins* v. *Pension Board,* 91 Cal. App. 548 [267 Pac. 323], takes judicial notice of the growth of the city of Sacramento and the rapid increase of the use of electrical appliances.

 Where exact figures as to population are not essential to the determination, but where jurisdiction depends upon the fact that the population of a political subdivision is in excess of a certain limitation and that "fact" is so clearly beyond the limitation as to be indisputable, and where it is a matter of common knowledge, as herein de-

fined, we are of the opinion that the proof is before the court and we should take judicial notice thereof. We do take judicial notice that the population of San Bernardino township on the date of the offense alleged in the information herein, was in excess of 30,000.

■ Respondent urges in furtherance of upholding the judgment herein that if the superior court had no jurisdiction, the appellate court had none. This is without merit. The appellate jurisdiction of this court in criminal matters does not depend upon the jurisdiction of the trial court, but on the fact that a defendant was prosecuted by indictment or information. (Art. VI, Const., sec. 4; *People* v. *Pingree*, 61 Cal. 141.)

The judgment is reversed and the superior court is directed to dismiss the action and discharge appellant.

Marks, Acting P. J., and Barnard, J., concurred.