GRIPPENTROG and others, Respondents, vs. CHEESE MAKERS' MANUFACTURING COMPANY, Appellant.

*January 20—February 15, 1944.*

For the appellant there was a brief by *Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau.*

For the respondents there was a brief by *Haight & Beilfuss* of Neillsville, and oral argument by *Hugo G. Haight.*

FRITZ, J.   At the times involved in this action the plaintiff and ten other persons, whose claims have been assigned to him, were employees of the defendant, and as such engaged in its business of making cheese boxes and also "scale boards." The latter are thin veneer disks used on the bottom and the top of cheese and between cheeses packed in the boxes.   Defendant's total production amounted to $70,000 per year, gross, of which $10,000 was for scale boards; and of the latter $600

worth were shipped out of the state. At the times in question there were in force and effect, so far as here pertinent, the following provisions of the Fair Labor Standards Act of 1938, 52 U. S. Stats. at L. 1060 (29 USCA, sec. 201 *et seq.*),—

Sec. 7 (a) : "No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

"(1) for a work week longer than forty-four hours during the first year from the effective date of this section,

"(2) for a work week longer than forty-two hours during the second year from such date, or

"(3) for a work week longer than forty hours after the expiration of the second year from such date,—

"unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Sec. 3 (b) : " 'Commerce' means trade, commerce, transportation, transmission, or communication among the several states or from any state to any place outside thereof."

Sec. 3 (i) : " 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof."

Sec. 16 (b) : "Any employer who violates the provisions of section 6 or section 7 of this act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated. The court in such action shall, in addition to any judgment awarded to the

plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

In relation to the Fair Labor Standards Act the court said in *United States v. Darby,* 312 U. S. 100, 118, 61 Sup. Ct. 451, 85 L. Ed. 609,—

"The recognized need of drafting a workable statute and the well-known circumstances in which it was to be applied are persuasive of the conclusion, which the legislative history supports . . . that the 'production for commerce' intended includes at least production of goods, which, at the time of production, the employer, according to the normal course of his business, intends or expects to move in interstate commerce although, through the exigencies of the business, all of the goods may not thereafter actually enter interstate commerce."

In *Walling v. Jacksonville Paper Co.* 317 U. S. 564, 571, 63 Sup. Ct. 332, 87 L. Ed. 460, the court said,—

"The fact that all of respondent's business is not shown to have an interstate character is not important. The applicability of the act is dependent on the character of the employees' work. *Kirschbaum Co. v. Walling, supra,* p. 524 [316 U. S. 517]. If a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce was established by the test we have described, he is covered by the act. Here as in other situations [*Kirschbaum Co. v. Walling, supra,* p. 523] the question of the act's coverage depends on the special facts pertaining to the particular business."

Under the stipulation between the parties in the case at bar it appears that because neither the plaintiff nor any of his ten fellow employees had been compensated by defendant, at the rate of one and one-half times the regular rate at which he was employed, for their work in the production of scale boards, in excess of the work week hours specified in sec. 7 (a) of the act, there is owing $247.92 to the eleven employees as overtime on their work in the production of scale boards, which were

shipped out of Wisconsin in interstate commerce; and that on scale boards sold in intrastate commerce, there was such overtime work by those employees that if it must be figured at the rate of time and one half there would be the additional amount of $317.29 owing to them. The trial court held the defendant liable to the employees for overtime work on scale boards for that sum of $317.29 in addition to the above-stated sum of $247.92; and that in connection with the total of those amounts the plaintiff was also entitled to recover a like amount as liquidated damages.

Defendant contends that the court, in holding defendant liable for those additional amounts for overtime work on scale boards regardless of whether they were shipped in interstate commerce, was in error because only the employees engaged in the production of scale boards for interstate commerce are entitled to overtime; and that because the total scale boards shipped in interstate commerce amounted to only $600, which was but six per cent of $10,000, the total amount of scale boards produced,—and was even somewhat less than one per cent of defendant's sales of $70,000 for cheese boxes and scale boards,—and because the total time of the work on the scale boards shipped in interstate commerce and the total time worked on the other scale boards and on cheese boxes was carefully kept and segregated by defendant, it can be held liable for overtime on only the scale boards which were actually shipped in interstate commerce. These contentions cannot be sustained.

Under the provisions of the Fair Labor Standards Act, as construed in *Walling v. Jacksonville Paper Co., supra,* the act is applicable and employees are covered thereby when a substantial part of their activities is in relation to goods moving in the channels of interstate commerce, even though all of the employer's business is not of an interstate character. The activities of defendant's employees in the production of the $600 worth of scale boards, which were shipped in interstate

commerce, could be considered by the court to be a substantial part of their total activities which produced scale boards worth $10,000. And when the amount of $247.92, owing for overtime work in producing the scale boards which moved in interstate commerce, is compared to the sum of $317.29, which would be the pay for overtime if figured at the same rate in producing, during the same period, the scale boards which were sold in intrastate commerce, then it is evident also that their activities in overtime work on scale boards shipped in interstate commerce were a substantial part of their entire activities in overtime work on all scale boards produced.

In relation to defendant's manufacture of cheese boxes it was stipulated that if defendant is liable under the act for work on cheese boxes, then $557.21 would be due for the total overtime of the eleven employees during the period covered by the complaint. The trial court held that plaintiff was entitled to recover also that sum of $557.21 for overtime work on the cheese boxes and a like sum of $557.21 as liquidated damages. In relation to the cheese boxes there is, however, no stipulation or proof that any part of that overtime was for work on boxes sold, or shipped, or otherwise moved in interstate commerce. The only witnesses as to the sales, deliveries, or use of the $60,000 worth of cheese boxes produced by defendant were Paul Blum and Joseph Prein, who were officers of the defendant corporation. Their testimony was to the effect that defendant's sales and deliveries of boxes were in Wisconsin, and defendant would have no knowledge or way of knowing in what directions those boxes or the cheese may go. Blum testified that during the period in question, before the war came on, a large part of the cheddar cheese,—he would say ninety per cent,—moved to the grinders making processed cheese, and those grinders were located within the state, and the other ten per cent was mostly local consumption. When the court suggested, "I think it can be stipulated that a large percentage of the cheese manufactured in Wisconsin goes

somewhere else for consumption." Blum added, "After it goes through the grinder." Subsequently Blum testified:

I know of my own knowledge that after the cheese is ground it is not shipped in the same boxes as the box that came from the factory. It is repackaged generally in what they call their little five-pound processed that is not manufactured by us at all. These cheese boxes then are generally shipped back and sold back to the manufacturer at a less figure than the cost of a new container. We do not sell them. The dealer does that himself. For instance, Straubel at Marshfield, which is part of the Kraft organization, they do the grinding at Green Bay. They take a load of cheese from Green Bay to Marshfield and bring a load of empty boxes back and hand them out to the factory. As they bring cheese in they take a load of secondhand boxes back. They may make as high as six, seven or eight trips back and forth before the box gets in such condition it cannot make another trip.

There were also the following proceedings:

"Mr. Haight [plaintiffs' counsel] : I know as a matter of fact that Miller and Armour ship cheese out of the city of Marshfield into Chicago and ship them in these boxes.

"The Court: The court knows that, but it isn't in your testimony.

"Mr. Haight: Judge Duffy took judicial notice of the fact that 51 per cent of the cheese was shipped out of the state of Wisconsin. I presume we can get Mr. Miller here.

"The Court: I am clearly of the opinion that 60 or 70 per cent of the cheese goes out of Wisconsin in its original form in the box. I don't think there is any question about it. Of course, you can get testimony to show that. I don't think processors use more than 10 per cent of the cheese in Wisconsin. A great deal of it goes into Chicago to make other kinds of cheese that have hard skins. It is a statistical record.

"Mr. Haight: I will ask for the privilege of submitting those statistics into court in this matter.

"The Court: You can get those and submit them to Mr. Brazeau, and if they are correct he will have no objection to them going into the record.

"Mr. Brazeau [defendant's counsel] : We claim the title completely passes and these people have nothing further to do with it."

It does not appear, however, that any such statistics were ever submitted or that any proof as to the matters thus stated by plaintiffs' counsel and the court was ever introduced in evidence. The nature and extent of the use or transactions in respect to cheese boxes produced by defendant, and particularly whether they were sold or used otherwise than in intrastate commerce, were not matters of which the court could take judicial notice. Although courts can take judicial notice of matters of common knowledge, the rule is not applicable when there are to be determined such issues as to the actual nature or extent of the operations or transactions of a particular party, as are involved in this action. *Ohio Bell Tel. Co. v. Public Utilities Comm.* 301 U. S. 292, 300, 301, 57 Sup. Ct. 724, 81 L. Ed. 1093. Consequently, in the absence of any proof to show that cheese boxes produced by defendant during the times in question moved in interstate commerce, or that defendant intended, hoped, or expected, or had reason to believe that they would so move, there cannot be sustained any recovery on account of overtime in the production thereof. In this respect the judgment must be modified by reducing the amount of plaintiffs' recovery for overtime, as well as his recovery of liquidated damages, by the sum of $557.21 in each instance; and as thus modified the judgment must be confirmed.

*By the Court.*—Judgment modified as directed in the opinion; and affirmed as modified.