SECOND DISTRICT COURT OF THE CITY OF PATERSON.

ALFRED SERMOND, PLAINTIFF, v. EDWARD LOTZ, DEFENDANT.

Decided May 24, 1946.

For the plaintiff, *Archibald Krieger.*

For the defendant, *Joseph Fumagali.*

SILBERMAN, D. C. J.   This action was brought to recover unpaid minimum compensation, unpaid overtime compensation, liquidated damages, attorney's fees and costs pursuant to section 6(a) and section 7(a) of the Federal Fair Labor Standards Act of 1938.   29 *U. S. C., tit. "Labor,"* § 16(b); 29 *U. S. C. A.,* §§ 206(a), 207(a), 216(b).

The case was tried by the court sitting without a jury.   No evidence was offered by the defendant, and from the evidence presented by the plaintiff, the following appears:

Plaintiff was a former employee of defendant.   During the period in question defendant was the owner of an ice manufacturing plant located in Paterson.   Plaintiff was employed as a box man and was required to work from 6:00 P. M. to 6:00 A. M. each day for seven days a week at a salary of twenty-four ($24) dollars per week.   His rate of wage was 28½ cents per hour.   Plaintiff's duties consisted in pushing the ice after it was produced into the storage box and also to push ice from the storage box on to a chute where it was carried down and made available for loading upon defendant's trucks for delivery to his customers.

Among customers served by the defendant were dealers who re-sold the ice and Phoenix Chemical and Color Works of Paterson who used the ice for industrial purposes.   Some of the dealers would receive delivery of the ice at the place of business of their customers in the defendant's trucks where the ice was unloaded by truck drivers of the defendant. Among such customers were the Great Atlantic & Pacific Tea Company and the New York, Susquehanna and Western Railroad.   The tea company maintained a warehouse at Hawthorne along the siding of the railroad where there was daily received at the warehouse shipments of perishables consisting of fresh fruits, vegetables and meat from all over the United States.   After arrival of these goods, ice manufactured by defendant was placed by his employees in the refrigerator cars containing the perishables while the cars were waiting to be

unloaded in order to preserve the contents of these cars until such time as they were ready for unloading. Defendant also manufactured the ice which was delivered in his trucks to the railroad which ice was used by it for cooling drinking water used by its employees at its roundhouse at Little Ferry.

It also appeared that defendant sold ice and delivered considerable quantities to his own customer, Phoenix Chemical and Color Works. This company was engaged in manufacturing dyestuffs in Paterson. In the course of its production of dyestuffs, ice was used by that customer as an agent or ingredient to lower the temperature of the chemicals used in compounding the dyestuffs.

At the trial, the chief chemist of this company related the chemical process which took place and which made necessary the use of said ice and related that ice was a necessary ingredient towards economically and effectively producing the dyestuffs. The dyestuffs after production were thereafter shipped by the Chemical Company to its customers located in various states of the United States.

Upon these facts, plaintiff contends that the defendant was covered by the act, and he should have received from his former employer, the minimum wage of 30 cents per hour (the effective rate at that time) and one and one-half times his basic rate of pay as overtime pay for each hour beyond the maximum of forty hours in each week. Defendant denies coverage and contends that he was not subject to the provisions of the statute.

The question presented is whether or not plaintiff was "engaged * * * in the production of goods for commerce" within the meaning of sections 6(a) and 7(a) of the act.

The court considers that under the circumstances of this case, the defendant was subject to the Federal Fair Labor Standards Act by reason of the terms of the statute and of its interpretation by the Supreme Court of the United States.

In *Brooklyn Savings Bank* v. *O'Neil*, 65 *S. Ct.* 895; 89 *L. Ed.* 876, the purpose, scope and intention of Congress in connection with the act was stated by the Supreme Court as follows:

"The legislative history of the Fair Labor Standards Act

shows an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce. The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce. To accomplish this purpose standards of minimum wages and maximum hours were provided."

The statute has received broad and liberal interpretation by the Supreme Court of the United States. In *Kirschbaum* v. *Walling,* 316 *U. S.* 517; 62 *S. Ct.* 1116, it was held that maintenance employees of a large building housing tenants engaged in the manufacture of goods later shipped in interstate commerce, were covered by the act because the work performed by these employees and the services supplied by them to the tenants were essential to the production of goods, by providing a safe and habitable place in which to engage in their business of manufacturing. The court concluded that the result followed by reason of section 3(j); 29 *U. S. C. A.,* § 203(j), which refers to "any occupation *necessary* to the production * * *." Following that case, the Supreme Court has held in a series of cases that coverage exists in any employment where the work of the employee on the goods or services rendered is so closely tied with the process of production and is so much a part of the integrated and coordinated efforts by which the goods are produced that it can be said that the work of the employee should be regarded as engaged in an *"occupation necessary to the production of goods for commerce."* *Warren-Bradshaw Drilling Co.* v. *Hall,* 317 *U. S.* 88; 63 *S. Ct.* 125; *Walton* v. *Southern Package Corp.,* 320 *U. S.* 540; 64 *S. Ct.* 320; *Armour & Co.* v. *Wantock,* 323 *U. S.* 126; 65 *S. Ct.* 165; *Roland Electrical Co.* v. *Walling,* 66 *S. Ct.* 413; 90 *L. Ed.* 326, and *Martino* v. *Michigan Window Cleaning Co.,* 66 *S. Ct.* 379; 90 *L. Ed.* 386.

In *Roland Electrical Co.* v. *Walling, supra* (decided January 28th, 1946), the Supreme Court held that the employees of an electrical contractor locally engaged in the commercial and industrial wiring and dealing in electrical motors and generators for commercial and industrial use whose customers are engaged in the production of goods for interstate commerce, are themselves engaged in the production of goods for commerce and so are within the coverage of the Federal Fair Labor Standards Act of 1938.

The court definitely and clearly stated that to establish coverage under the Federal Fair Labor Standards Act, it is not necessary that an employee be directly engaged in commerce or be engaged in the production of an article which itself becomes a subject of commerce, but that the employee be engaged in an occupation which is necessary to the production of a part of any article or subject of commerce in any character which is produced for trade, commerce or transportation among the other states. He need not be employed exclusively in the specific occupation and the occupation need not be indispensable so long as it is needed in such production and, if omitted, would handicap the production.

In addition to these authorities, I have considered these cases: *Chapman* v. *Home Ice Co.*, 136 *Fed. Rep.* (*2d*) 353; *affirmed*, 320 *U. S.* 762; 64 *S. Ct.* 72; *Reynolds* v. *Salt River Valley Water Users Associates*, 143 *Fed. Rep.* (*2d*) 863; *Walling* v. *Amidon, d. b. a. Pueblo Sand and Gravel Co.*, 153 *Id.* 159.

In the case at bar, ice manufactured by defendant was used by the A. & P. warehouse and by the railroads in connection with activities engaged in by them. The relationship of the use of ice by these persons to the ice manufactured by the defendant was closely related to the activities in which these persons were themselves engaged. The plaintiff's part in the production of the ice by the defendant in this case was necessary to the activities of the warehouse and the railroad.

It appears that in the foregoing incident the ice passed an intermediary dealer before being utilized in the refrigeration of the perishable goods prior to their unloading from the refrigerated railroad cars and likewise as respects the ice used

by the railroad for its employees. However, the intermediate transaction would not seem of importance because the incident of the passage of title does not fix the limits of federal regulation under the Commerce Clause, because the act applies to any employer who expects, hopes or intends when goods are produced that they will move in interstate commerce. *United States* v. *Darby,* 312 *U. S.* 100; 61 *S. Ct.* 451; *Hamlet Ice Co.* v. *Fleming,* 127 *Fed. Rep.* (*2d*) 165.

With respect to the ice sold by defendant to the chemical company the relationship between the production of the ice and the use by the customer was even closer. The ice was used by the chemical company as a necessary ingredient in the production of the dyestuffs. The use of such ice was tied so closely with the process of production of the goods shipped by the chemical company and were so much a part of the integrated and co-ordinated efforts by which the goods were produced as to render the plaintiff in this case who handled the ice at the plant of the defendant engaged in an "occupation necessary to the production" of dyestuffs. Without the ice you could not manufacture the dyestuffs and since the dyestuffs were shipped in interstate commerce the manufacturer of the ice, the defendant in this case, employed plaintiff who was engaged in an occupation necessary to the production of goods for commerce.

The recent decisions of the Supreme Court have been broad to the extent of coverage. That court recently held that window cleaners acting for an independent contractor who render service in factories manufacturing goods shipped in interstate commerce were held to be covered by the act because the cleaning of windows is necessary to a clean place as an industrial requirement, and such service constitutes a service necessary to the production of goods for commerce. *Martino* v. *Michigan Window Cleaning Co.,* 66 *S. Ct.* 379; 90 *L. Ed.* —.

Under all the circumstances, I therefore find that plaintiff was during the period of his employment engaged in the production of goods for commerce under the terms of the act.

During the period of plaintiff's employment, he received twenty-four ($24) dollars each week for a work-week of

eighty-four hours. His rate of wage was therefore 28½ cents per hour. He should have received under section 6 of the act the minimum wage of thirty cents per hour. He was underpaid during the period of his employment of twenty-three weeks the sum of $28.98 as unpaid minimum wages.

Under the provisions of section 7 of the act, plaintiff was entitled to receive time and one-half for every hour beyond forty hours in each work-week. He was employed for twenty-three weeks for eighty-four hours each week and should have received overtime pay at the rate of 14¼ cents for forty-four hours each week. Said unpaid overtime compensation during the period of his employment amounted to $144.21.

Under section 16(b) of the act, plaintiff is entitled to an additional equal amount as liquidated damages because the defendant failed to pay the statutory rate of pay at the time plaintiff earned the same.

Plaintiff is therefore entitled to a verdict in the amount of $346.38, together with an attorney's fee for the services rendered to him which is hereby fixed and allowed in the amount of $75 or a total of $421.38.

Judgment will be entered in favor of plaintiff and against the defendant in the amount of $421.38, with costs.